745 N.W.2d 585 (2008)
275 Neb. 194
STATE of Nebraska ex rel. COUNSEL FOR DISCIPLINE OF the NEBRASKA SUPREME COURT, Relator,
v.
Richard E. SCOTT, Respondent.
No. S-97-584.
Supreme Court of Nebraska.
March 7, 2008.
*587 Kent L. Frobish, Assistant Counsel for Discipline, for relator.
David A. Domina, of Domina Law Group, P.C., L.L.O., Omaha, for respondent.
WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.
PER CURIAM.
On June 20, 1997, we imposed a 1-year suspension on Richard E. Scott for his violation of several disciplinary rules.[1] A week later,[2] we disbarred Scott after he pled guilty to one count of filing a false tax return.[3]
In April 2007, Scott applied for reinstatement of his license to practice law in Nebraska. Counsel for Discipline filed a resistance to the application. We appointed a referee, who recommended that we readmit Scott contingent upon certain conditions. Counsel for Discipline filed exceptions to the referee's recommendations. For the reasons that follow, we deny Scott's application for reinstatement.

STATEMENT OF FACTS
Scott was admitted to the Nebraska bar on February 28, 1972. In October 1979, Scott joined a small collections and personal injury law firm in Lincoln, Nebraska, managed by Brian Watkins, an acquaintance of Scott's from law school. Scott and Watkins became partners and agreed to share the profits and expenses equally.

1-YEAR SUSPENSION
On March 17, 1994, Scott was retained by Daniel Wheeler to represent him in a claim before the Nebraska Workers' Compensation Court against Wheeler's former employer and the State of Nebraska. *588 Scott filed a petition on behalf of Wheeler in the Workers' Compensation Court.
Wheeler's trial was set for July 27, 1994. On July 7, Scott filed a motion for continuance, alleging that "the Plaintiff is in the State of Alaska for until [sic] the first week in August and will be unable to attend the hearing." The motion was sustained, and the trial date was continued until August 8. On August 8, neither Scott nor Wheeler attended the trial. Scott was attending a hearing in Kearney, Nebraska. Wheeler claimed he was never notified of the August 8 trial date or that Scott would not be attending. Because Scott could not attend the August 8 trial, Scott sent Watkins instead. Watkins requested that the court continue the trial until October because Wheeler was allegedly "in the State of Alaska until the first week of October 1994." The court denied Watkins' request and shortly thereafter entered an order dismissing Wheeler's case with prejudice.
In October 1994, Scott received a correspondence from the Department of Veterans Affairs (VA), informing Scott that it was claiming a subrogation interest in Wheeler's workers' compensation claim. Included with the letter were Wheeler's medical records from the VA hospital. In a letter dated November 7, 1994, Scott informed Wheeler of the subrogation claim and stated that he "will try and go forward with your case however, I'm certainly not making any guarantees." In December, Wheeler requested information regarding his workers' compensation ease. Scott responded by letter, explaining that because of the lateness of the information received from the VA, he was having a difficult time with the case. Scott said nothing to Wheeler about the prior dismissal of the case.
In January 1995, the VA requested an update on Wheeler's workers' compensation claim. Scott informed the VA that the case had been dismissed but that he was still working on the claim. Scott received another request for an update from the VA in April. In his response, Scott stated that "Wheeler's matter has been submitted to the Workers['] Compensation Court. To date, we have not received a result as yet, but will keep you informed as to the status of this claim." At the time of Scott's response, no new evidence had been submitted, nor was anything pending before the court. The VA made another request in October, seeking information regarding Wheeler's workers' compensation claim. In his response, Scott explained that Wheeler's workers' compensation claim "is going to be dismissed."
On December 26, 1995, Wheeler notified Scott that he was terminating Scott's representation. Wheeler filed a complaint against Scott with the Counsel for Discipline. Scott replied to the complaint in a letter dated January 23, 1996, stating:
The Workers' Compensation case was scheduled and continued twice because of [Wheeler's] request. The final time the matter was set, ... Wheeler did not show up, which was in August of 1994 and the matter was dismissed at that time. We would have had a very difficult time of proving our case, since we had no doctor tieing [sic] the injury to a work related accident and without his testimony I felt that there would be no need to go further.
This court found that in light of the appointed referee's findings, Scott's response to the complaint was
not factually correct or was misleading in the following respects: (1) Wheeler never requested a continuance of his case; (2) Wheeler did not show up at the trial because he was never given notice of the trial date; and (3) the workers' compensation case was dismissed because the judge would not grant the *589 request for continuance made at the time the trial was scheduled to begin, Watkins was not prepared for trial, and Scott failed to provide defendants with the mandatory disclosure statements.[4]
We also noted several other findings made by the referee, including:
Scott misrepresented that Wheeler would be returning to Lincoln on a certain date, ... Scott had no basis for stating a date upon which Wheeler would return and had a weak basis for concluding that Wheeler was in Alaska, and ... Scott made a series of misrepresentations to representatives of Veterans Affairs with regard to the status of the workers' compensation case.[5]
We recognized that there were mitigating factors present. In particular, we noted that Scott's actions were done in an effort to maintain the viability of Wheeler's claim and not to benefit himself, that Scott did not receive a fee for representing Wheeler, and that Wheeler was not injured by Scott's conduct. We concluded, however, that "these mitigating factors fail to overcome the fact that Scott deliberately lied to a court and to [the VA]."[6] Accordingly, on June 20, 1997, Scott was suspended from the practice of law for 1 year.[7]

FILING FALSE TAX RETURNS
When Scott began working with Watkins in late 1979, Scott adopted Watkins' unethical procedures for handling funds received by the firm. Scott testified that as third-party checks were received by the firm to settle cases, the checks would be taken to the bank, with the client present, and the checks would be cashed. The client would receive his or her portion of the settlement, and the firm would take the remainder without ever recording the receipt of the income on the firm's books or reporting the income on Scott's or Watkins' tax returns. Similarly, when a client paid for the firm's services in cash, that payment would not be recorded on the firm's books or on the appropriate tax return.
Scott testified that this pattern of failing to record income and misstating income on state and federal tax, returns continued annually until the Internal Revenue Service (IRS) learned of the firm's fraudulent conduct in 1994. In 1994, the IRS interviewed Scott in connection with its investigation of his tax reporting. Scott testified that during the interview, he cooperated, answered the questions truthfully, and admitted to what he had done.
Several federal criminal charges were filed against Scott in a superseding indictment on August 21, 1996. Scott entered a plea of guilty to one count of the criminal indictment, and the remaining charges were dismissed. That count of the indictment had alleged that Scott willfully made and subscribed to a U.S. individual income tax return for the 1990 calendar year, which return was false "in that said return stated ... that [Scott] had taxable income of $2,915.00, whereas, [Scott] well knew and believed that his taxable income ... was at least $97,277.85 for the calendar year of 1990."
Judgment was entered against Scott, and he was sentenced to serve 1 year 1 day in federal prison. The judgment also contained a section entitled "Statement of Reasons for Sentence," which included the following: "The Court determines that the *590 applicable guidelines are: ... Restitution: $61,112.28." The court also explained in its judgment that a "[fine is waived because of [Scott's] inability to pay a fine, and because payment of a fine would interfere with [Scott's] ability to make restitution."
On June 2, 1997, Scott voluntarily surrendered his license to practice law, admitting that he violated Canon 1, DR 1-102(A)(3) and (4), of the Code of Professional Responsibility. On June 27, Scott was disbarred.[8] After completing his sentence of imprisonment, Scott returned to Lincoln.

APPLICATIONS FOR REINSTATEMENT
In October 2005, Scott filed an application for reinstatement. Counsel for Discipline filed a resistance to Scott's application. This application was denied without a hearing. In April 2007, Scott again applied for reinstatement of his license and Counsel for Discipline filed another resistance to Scott's application. We appointed a referee who conducted an evidentiary hearing. At the hearing, Scott presented evidence regarding his work history following his release from prison. The record reflects that shortly after leaving prison, Scott worked for approximately 2 years for a central Nebraska feedlot Scott was hired by the feedlot to assist the owners and their attorneys in the investigation of apparent fraud and embezzlement by the feedlot manager. Scott's duties included, among other things, analyzing and matching documents, invoices, and bank records, and then reporting his findings to the attorneys involved. After finishing his employment with the feedlot, Scott continued working as an investigator for a series of attorneys,
In 2005, Scott entered into a partnership with two other individuals and established a partnership called ABC Gaming that promoted gaming ventures on behalf of Indian tribes. The relationship between the partners ended after approximately 9 months when the other two partners allegedly failed to pay Scott income that was owed to him. At the time of the hearing in this case, the dispute over the alleged earnings was being litigated in Lincoln County, Nebraska.
Scott is currently working for an environmental firm in Lincoln that does ground water testing and lead remediation, among other things. Scott testified that since being disbarred in 1997, he has at no time given legal advice or engaged in the unauthorized practice of law.
With regard to making restitution, Scott testified that he has reached a settlement agreement with the State of Nebraska, Department of Revenue. Pursuant to the settlement agreement, Scott is making monthly payments of $150. Scott still owes the State of Nebraska approximately $18,000, but Scott testified that the State had informed him that if he were to pay a lump sum of $3,000 or $4,000, the entire amount would be settled.
As to the federal income tax obligation owed to the IRS, Scott testified that 5 years ago, he was informed that he owed approximately $300,000 to as much as $400,000 in taxes, interest, and penalties. The record reflects that Scott has not made any payments to the IRS in relation to this amount. Scott testified that he has tried several times to negotiate a payment schedule and come to an agreed-upon balance with the IRS, but has been unsuccessful.
Scott explained that the IRS has not attempted to collect payments from him for more than 3 years. With regard to the $61,112.28 restitution, Scott testified that it *591 has never been paid, nor has the IRS attempted to collect this amount. Scott recognizes that because he applied for reinstatement, the IRS will likely reinitiate collection proceedings against him. Scott stated that he would "welcome" the opportunity to reach an agreement with the IRS and would be willing to make his payments "[i]f the ability is there...."
At the hearing, Scott's wife and a long-time friend testified in favor of Scott's reinstatement. Scott also offered several letters supporting his reinstatement, including letters from practicing attorneys, former employers, business associates, and a pastor. Scott has no criminal record other than the 1997 conviction which resulted in his disbarment.
Following the hearing, the referee recommended that we readmit Scott to the practice of law, contingent upon Scott's execution of a mutually agreeable repayment plan with the IRS, commencement of payments under the plan, and successful completion of the Nebraska bar examination. Counsel for Discipline filed exceptions to the referee's recommendation.
On January 10, 2008, the date of Scott's oral argument to this court, Scott filed a "Motion for Leave to Supplement Record and Report Developments." We granted Scott's motion and received his accompanying affidavit and attached exhibits.

ASSIGNMENT OF ERROR
Counsel for Discipline takes exception to the referee's findings, which we summarize, that Scott currently possesses good moral character sufficient to warrant reinstatement and that Scott's present fitness will permanently continue in the future.

STANDARD OF REVIEW
In attorney discipline and admission cases, we review recommendations de novo on the record, reaching a conclusion independent of the referee's findings.[9] When credible evidence is in conflict on material issues of fact, however, we consider and may give weight to the fact that the referee heard and observed the witnesses and accepted one version of the facts rather than another.[10]

ANALYSIS
As the court which disbarred Scott, we have inherent power to reinstate him to the practice of law.[11] We recognize, however, that in considering an application for reinstatement to the practice of law, this court owes a solemn duty to protect the public and the legal profession, which consideration must be performed without regard to feelings of sympathy for the applicant.[12] A mere sentimental belief that a disbarred lawyer has been punished enough will not justify his or her restoration to the practice of law.[13] The primary concern is whether the applicant, despite the former misconduct, is now fit to be admitted to the practice of law and whether there is a reasonable basis to believe that the present fitness will permanently continue in the future.[14] In short, reinstatement after disbarment is difficult.[15]
*592 A disbarred attorney has the burden of proof to establish good moral character to warrant reinstatement[16] The applicant must carry this burden by clear and convincing evidence.[17] The proof of good character must exceed that required under an original application for admission to the bar because it must overcome the former adverse judgment of the applicant's character.[18] It naturally follows that the more egregious the underlying misconduct, the heavier an applicant's burden to prove his or her present fitness to practice law.[19]
In June 1997, we suspended Scott from the practice of law for a period of 1 year for, among other things, deliberately lying to a court. Seven days later, we disbarred Scott after he pled guilty to one count of filing a false tax return. Scott now seeks reinstatement of his license. Despite the misconduct that led to Scott's disbarment, the referee recommended that Scott be reinstated.
The record reflects that since his release from prison, Scott has taken positive steps to reestablish himself in the community. Furthermore, Scott's testimony reflects that he now takes responsibility for his past mistakes and appears to be remorseful. However, while Scott's efforts in this regard are certainly commendable, we disagree with the referee's recommendation that Scott be reinstated to the practice of law at this time. We find the evidence of Scott's present moral character to be insufficient to overcome the heavy burden imposed by his past egregious misconduct.
For example, in State ex rel. NSBA v. Kinney,[20] an applicant for reinstatement had been disbarred after he kept fees that should have been turned over to his employer's law firm. Twenty years later, he sought reinstatement. In granting his application for reinstatement, we noted, among other things, that since his disbarment, the applicant had effectively addressed his drug and alcohol problems, made restitution to his employer for the misappropriated funds, and had become involved with many charitable organizations.
But in the present case, Scott has a significantly greater history of dishonest conduct. Scott committed a serious crimehe intentionally and grossly misstated his income and knowingly filed. fraudulent tax returns for more than 10 years. Scott testified that he knew what he was doing was illegal, yet continued his illegal conduct until he was finally caught by the IRS. The duration and repetitive nature of Scott's dishonest actions distinguishes this applicant from the applicant in Kinney. In short, we are very troubled by the fact that for more than a decade, Scott made a conscious and continuous effort to defraud the government. We further note that Scott's disbarment for filing fraudulent tax returns was not the first time Scott had been disciplined by this court. Unlike the applicant in Kinney, Scott, in an incident unrelated to his tax fraud, was given a 1-year suspension for, among other things, lying to a court.
Furthermore, in reinstating the applicant in Kinney, we specifically noted that restitution had been made. But here, *593 Scott has failed to make a single payment in restitution to the IRS despite the fact that, including taxes, penalties, and interest, the total amount owed may be as high as $300,000 or $400,000. As justification for his lack of payment, Scott explained that the IRS has not attempted to collect the money from him for more than 3 years. While we recognize that Scott has made some payments to the State of Nebraska and recently made an effort to contact the IRS, before this time, insufficient effort was made. And more importantly, no actual restitution payments have been submitted to the IRS. We find Scott's restitution efforts to be inadequate.
Upon due consideration of the record, we conclude that given the egregious and prolonged nature of Scott's past dishonest conduct, his prior discipline, and his insufficient efforts to make restitution, Scott has not met his burden of establishing sufficient moral character to warrant reinstatement.

CONCLUSION
We conclude on the basis of our independent review that Scott has not met his burden of showing by clear and convincing evidence that his license to practice law in Nebraska should be reinstated at this time. Scott's application is therefore denied.
APPLICATION FOR REINSTATEMENT DENIED.
HEAVICAN, C.J., not participating.
NOTES
[1] State ex rel. NSBA v. Scott, 252 Neb. 698, 564 N.W.2d 588 (1997).
[2] State ex rel. NSBA v. Scott, 252 Neb. 749, 566 N.W.2d 741 (1997).
[3] I.R.C. § 7206(1) (2000).
[4] State ex rel. NSBA v. Scott, supra note 1, 252 Neb. at 703, 564 N.W.2d at 591.
[5] Id. at 703, 564 N.W.2d at 592.
[6] Id. at 704, 564 N.W.2d at 592.
[7] See id.
[8] State ex rel. NSBA v. Scott, supra note 2.
[9] State ex rel. NSBA v. Kinney, 274 Neb. 412, 740 N.W.2d 607 (2007).
[10] Id.
[11] See State ex rel. Counsel for. Dis. v. Mellor, 271 Neb. 482, 712 N.W.2d 817 (2006).
[12] Id.
[13] State ex rel. NSBA v. Kinney, supra note 9.
[14] State ex rel. Counsel for Dis. v. Mellor supra note 11.
[15] See id.
[16] State ex rel. NSBA v. Kinney, supra note 9.
[17] See, id.; Neb. Ct. R. of Discipline 10(J) and (V) (rev.2005).
[18] See State ex rel. NSBA v. Kinney, supra note
[19] Id.; State ex rel. Counsel for Dis. v. Mellor, supra note 11.
[20] State ex rel. NSBA v. Kinney, supra note 9.