762 N.W.2d 294 (2009)
277 Neb. 343
STATE of Nebraska ex rel. Counsel for Discipline of the Nebraska Supreme Court, relator,
v.
William C. PETERS, Jr., respondent.
No. S-07-517, S-07-960.
Supreme Court of Nebraska.
March 13, 2009.
*296 Kent L. Frobish, Assistant Counsel for Discipline, for relator.
Maren Lynn Chaloupka and Robert Paul Chaloupka, of Chaloupka, Holyoke, Hofmeister, Snyder & Chaloupka, Scottsbluff, for respondent.
HEAVICAN, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.
PER CURIAM.

I. NATURE OF CASE
The Counsel for Discipline of the Nebraska Supreme Court brought formal charges against William C. Peters, Jr., a member of the Nebraska State Bar Association. The formal charges alleged that Peters violated certain disciplinary rules and his oath of office as an attorney. The charges were filed in two separate cases that have been consolidated.
Peters was found by a court-appointed referee to have violated sections of the Code of Professional Responsibility and the Nebraska Rules of Professional Conduct. The referee recommended that Peters' license to practice law be suspended for 60 days and that upon reinstatement, he be required to engage an attorney to monitor his practice for 1 year at his own *297 cost. The Counsel for Discipline filed exceptions to the recommended sanction as being too lenient. Peters also filed exceptions to the referee's report.

II. FACTS

1. JULIE A. SCHMUNK
The formal charges against Peters in case No. S-07-517 allege that he was hired by Julie A. Schmunk, formerly known as Julie A. Wyatt (Julie), to represent her in a dissolution of marriage case. Kerry Wyatt (Kerry), Julie's husband at the time, was not represented by separate counsel. Kerry and Julie reached an amicable settlement of all issues and signed a property settlement agreement prepared by Peters, and a decree was entered on August 17, 2004.
One asset of the parties was a Thrift Savings Plan (TSP) account containing approximately $40,000 that was in Kerry's name only. In order to liquidate the account without a penalty, the account had to be awarded to Julie as part of the divorce decree. When the decree of dissolution and property agreement were submitted to the TSP finance center for disbursement, the administrators of the plan determined that the decree was sufficient to award a one-half share of the account to Julie, and that amount was paid to her in December 2004. However, the administrators determined that the decree was not properly worded to allow for disbursement of the other half of the account, and Kerry and Julie were notified of the problem.
In a letter to the Counsel for Discipline, Kerry stated that he had explained to Peters that he had both a survivors benefit plan and a TSP account and claimed that he had provided all the information Peters would need to prepare the divorce decree and property settlement. Kerry said Peters knew of the problem with the TSP account payment in the fourth quarter of 2004. After Kerry learned that the wording in the divorce decree would not allow the second payment from the TSP account, he contacted Peters, who agreed to work on the problem. Kerry said that he continued to contact Peters by fax, telephone, and e-mail and that he provided Peters with the contact information for the TSP legal department on several occasions.
Julie also told Peters in June 2005 that the decree did not contain the correct legal language in order to allow disbursement of the second payment. As time passed, Peters continued to assure Julie that he was working to resolve the issue. The second payment from the TSP account was not processed until November 8, 2006.
Peters said that after Julie contacted him about the second payment, he advised her that she was not entitled to additional moneys from Kerry's retirement plan until he retired and that the date of his retirement would be determined in the future. Peters told the Counsel for Discipline that he believed Julie was going to follow up on the TSP account herself.
The formal charges alleged that between January 2005 and May 2006, Kerry and Julie repeatedly contacted Peters to ask him to take the necessary steps to correct the problem with the decree. Julie filed a grievance against Peters with the Counsel for Discipline on June 8, 2006, alleging that Peters had neglected to complete the representation for which he had been paid and had failed to take the necessary steps to correct the decree so the TSP account could be disbursed. Peters did not respond when he received a copy of the grievance letter, and the Counsel for Discipline sent a second letter on July 12. Peters responded on July 21, but he did not address the TSP account issue.
Kerry, who was unaware that Julie had filed a grievance, contacted Peters on July *298 25, 2006, to ask again about completing the necessary steps to get the TSP account released to Julie. Peters drafted a stipulation and a proposed order, which Kerry signed. An amended order intended to comply with TSP requirements was signed by the court on September 15. On September 29, TSP administrators directed payment of the balance of the account to Julie.
The formal charges included an allegation that Peters violated the following provision of Canon 6 of the Code of Professional Responsibility for his actions prior to September 1, 2005: "DR 6-101 Failing to Act Competently. (A) A lawyer shall not: . . . (3) Neglect a legal matter entrusted to him or her."
For acts and omissions occurring after September 1, 2005, the formal charges included that Peters violated his oath of office as an attorney and the following provisions of Neb. Ct. R. of Prof. Cond. as now codified: "§ 3-501.3. Diligence. A lawyer shall act with reasonable diligence and promptness in representing a client" and "§ 3-501.4. Communications. (a) A lawyer shall: . . . (3) keep the client reasonably informed about the status of the matter; [and] (4) promptly comply with reasonable requests for information."

2. JUDITH R. HERMAN
The formal charges in case No. S-07-960 relate to Peters' representation of Judith R. Herman in several cases.

(a) Probate of Estate
The first count arose from Herman's request in 1999 that Peters initiate estate proceedings for her parents, who died in July and August 1999. Between 1999 and May 2006, Peters failed to open estate proceedings for Herman's parents and failed to effectuate the transfer of property in Kimball, Nebraska, to Herman. Herman terminated Peters' representation in May 2006 after retaining a second attorney. The formal charges also allege that Herman gave Peters her parents' wills and that he failed to return them to her.
The formal charges for count I included that Peters violated DR 6-101(A)(3) of the Code of Professional Responsibility and also that Peters violated §§ 3-501.3 and 3-501.4(a)(3) and (4). In addition, Peters allegedly violated Neb. Ct. R. of Prof. Cond. §§ 3-501.15(a) and (d) and 3-501.16(d), which require a lawyer to hold a client's property separately from the lawyer's property and to return the same upon termination of representation.

(b) Kinder Morgan, Inc.
In count II, the formal charges allege that Peters failed to properly pursue a legal action related to a residential rental property in Scottsbluff, Nebraska, owned by Herman. As to this count, the formal charges included that Peters violated DR 6-101(A)(3) of the Code of Professional Responsibility and §§ 3-501.3 and 3-501.4(a)(3) and (4).
The property at issue was vacant in February 2003, when Kinder Morgan, Inc., a natural gas utility company, wrongfully terminated gas service. As a result, a water pipe burst, causing water damage to the residence. The residence was sold in February 2004 prior to any repair of the water damage. Herman hired Peters to file suit against Kinder Morgan for damages. Peters drafted a complaint and filed it on December 10. Peters allegedly failed to respond to contacts from an attorney for Kinder Morgan seeking an early resolution of the matter. In addition, Peters allegedly failed to provide the attorney with documentation to support the alleged damages and failed to send copies of communications from the attorney to Herman. Peters also allegedly failed to adequately respond to requests for production of documents, failed to inform Herman of the *299 requests, and misplaced additional documentation Herman provided to support her claim for lost rent due to damage to the residence.
Peters took no action on the case after October 4, 2005. Herman sent Peters a letter on May 25, 2006, informing him that she was terminating his representation of her. She settled her claim against Kinder Morgan on September 13, and the case was dismissed on October 5.

(c) Past-Due Child Support
The third count in the formal charges related to the recovery of past-due child support for Herman. The referee found no ethical violations related to the child support claim, and the Counsel for Discipline has not appealed that finding. Both parties agree it is no longer at issue.

3. REFEREE'S FINDINGS: JULIE
After a hearing, the referee submitted a report and recommendation, including findings of fact. Regarding the grievance filed by Julie, the referee found that the primary asset to be divided in the divorce was a TSP account worth approximately $40,000. Kerry and Julie both contacted Peters to tell him that the TSP legal department said the divorce decree did not contain the requisite language for issuance of the second payment. Kerry had followup contacts with Peters by fax, telephone, and e-mail regarding the TSP account payment.
Peters did not respond to a letter from the Counsel for Discipline sent in June 2006, after Julie had filed her grievance. The Counsel for Discipline sent a second letter on July 12, and Peters submitted a response on July 21, in which he stated that he had told Julie the money was not available to her until Kerry retired. Peters said he believed that Julie planned to follow up on her own.
On July 25, 2006, Peters drafted and obtained Kerry's signature on a stipulation and agreement to be filed with the district court to remedy the issues with the TSP account. The court entered a "Retirement Benefits Court Order" on July 26. The order directed that the remaining portion of the TSP account, in the amount of $20,241.98, be paid to Julie.
The referee found that Peters was aware of the issues regarding the second TSP account payment prior to his July 21, 2006, response to the Counsel for Discipline and that Peters simply failed to follow through by taking any action on the requests of Kerry and Julie. The referee found by clear and convincing evidence that Peters violated DR 6-101 and § 3-501.3 by failing to act competently and with reasonable diligence and promptness in responding to inquiries by Kerry and Julie to address the legal issues concerning the second TSP account payment. The referee found that Peters' "benign neglect" was not done with an intent to prejudice or damage his client.

4. REFEREE'S FINDINGS: HERMAN

(a) Probate of Estate
In the first count related to Herman, the referee found that Peters took no action to open estate proceedings or to transfer the real property between 1999 and May 2006, when his representation was terminated. Peters testified he did not initiate the estate proceedings and transfer the real property because he had not received any money from Herman to pay for the costs and fees to handle the matter. Peters claimed he told Herman that he would need "a few hundred dollars" to open the estate. However, in Peters' initial response to a letter from the Counsel for Discipline, Peters stated that some of the matters he handled for Herman had been set aside in favor of more pressing problems, *300 with Herman's knowledge and consent.
The referee found it "distressing" that Peters did not mention the failure to be paid as a defense in his January 25, 2007, letter responding to the Counsel for Discipline. Peters offered no evidence concerning a fee agreement or to show that Herman consented to setting the estate matter aside while other matters were addressed. Peters testified that he never sent any correspondence to Herman about the estate matter.
The referee found by clear and convincing evidence that Peters violated DR 6-101 and § 3-501.3 by failing to act competently and with reasonable diligence and promptness in opening an estate for Herman's parents and transferring the real property to Herman. He also found by clear and convincing evidence that Peters violated § 3-501.4 by failing to keep Herman reasonably informed about the status of the estate matter. The referee did not find that Peters violated §§ 3-501.15 and 3-501.16 by failing to properly hold the original wills. Herman conceded at the hearing before the referee that the original wills could have been misplaced while they were in her possession. Therefore, it was not sufficiently clear if and when Peters would have had the responsibility to hold the wills for Herman's benefit.

(b) Kinder Morgan
The second count involved a lawsuit filed by Herman against Kinder Morgan. The complaint alleged that Herman had sustained $10,000 in damages to the property and $1,875 in damages for lost rents. Herman testified that Peters did not send her a copy of the letter from Kinder Morgan's counsel seeking resolution of the matter or inform her of Kinder Morgan's offer to discuss a settlement. Peters claimed he sent a copy of the letter, but he acknowledged that he had no records to corroborate the claim.
Nor did Peters provide Herman with copies of the requests for production of documents or letters from Kinder Morgan's counsel. Peters admitted at the hearing before the referee that he did not respond to Kinder Morgan's second request for documents. Peters provided Kinder Morgan with a repair estimate for the water damage, which was the only documentation related to the discovery requests. Kinder Morgan replied that Peters' response was inadequate and not responsive to the discovery requests. On May 25, 2006, Herman sent Peters a letter terminating his representation of all her legal matters and informing him that she had retained another attorney to handle her claim against Kinder Morgan.
The referee found that Peters provided scant evidence that he kept Herman reasonably informed of the status of her action against Kinder Morgan. While Peters testified that he forwarded the discovery requests and the motion to compel, Herman disputed these contentions. Peters also admitted that there were no cover letters for delivery of the documents to Herman to corroborate his testimony. Peters testified that he communicated to Herman through telephone conversations. The referee said that Peters' testimony lacked credibility, because he repeatedly acknowledged that he failed to provide telephone records evidencing any calls to Herman. In addition, the referee found that contrary to Peters' prior assertions in his deposition, there were no entries on his day planner or in his billing records to substantiate any telephone calls to Herman.
The referee found by clear and convincing evidence that Peters violated § 3-501.4 by failing to keep Herman reasonably informed about the status of the matter. It *301 was clear that Peters had difficulty producing the documents requested in Kinder Morgan's discovery requests, but he failed to take proper action to respond to the requests. The referee also found by clear and convincing evidence that Peters violated DR 6-101 and § 3-501.3 by failing to act competently and with due diligence.

5. REFEREE'S RECOMMENDATIONS AS TO SANCTION
The referee noted that Peters had previously received a private reprimand on April 18, 2002, for violating Canon 1, DR 1-102(A)(1), (4), and (5), and DR 6-101(A)(2) and (3), based on charges that he neglected a legal matter entrusted to him. On January 14, 2005, for violating DR 1-102(A)(1) and (5) and DR 6-101(A)(2), Peters received a public reprimand, was placed on probation for 1 year, was restricted from taking bankruptcy cases, and was ordered to complete 15 hours of continuing legal education in the area of bankruptcy law. The sanctions were based on charges that he neglected a bankruptcy action.
The referee noted that Peters presented several mitigating factors. He offered into evidence his involvement in community and volunteer projects. However, the referee found that Peters' community service did not deserve "a lot of merit" in these cases. Peters was advised to consider whether his extensive community service might deserve some of the blame for his failure to diligently represent his clients.
The referee recommended that Peters be suspended from the practice of law for 60 days, that a public reprimand be issued, and that upon reinstatement, Peters be ordered to work with a practice monitor for 1 year at his own cost.

III. ASSIGNMENTS OF ERROR
The Counsel for Discipline filed exceptions to the referee's report, asserting that the recommended sanction was too lenient. Peters also filed exceptions, arguing that the referee (1) failed to apply the clear and convincing evidence standard of review regarding findings that ethical violations were committed, (2) placed burdens of proof on Peters and failed to require the Counsel for Discipline to carry its burden of proof, and (3) erred in finding that the testimony of the complainants constituted credible evidence on which to base findings of ethical violations.

IV. STANDARD OF REVIEW
A proceeding to discipline an attorney is a trial de novo on the record.[1] In attorney discipline and admission cases, the Nebraska Supreme Court reviews recommendations de novo on the record, reaching a conclusion independent of the referee's findings. When credible evidence is in conflict on material issues of fact, however, the court considers and may give weight to the fact that the referee heard and observed the witnesses and accepted one version of the facts rather than another.[2]

V. ANALYSIS

1. JULIE'S GRIEVANCE
The formal charges in case No. S-07-517 allege that Peters failed to act diligently and competently in obtaining an order to allow Kerry's TSP account to be liquidated and distributed to Julie as agreed to by the parties. It was not until almost 2 years after the property settlement agreement was prepared that an order *302 was signed by the district court directing distribution of the TSP account as provided in a stipulation filed on July 25, 2006.
Peters argues that the "key determination" related to disbursement of the TSP account is whether Julie ever asked him to resolve the incomplete transfer of the funds.[3] He asserts that there is no physical evidence to support her claim, and he attacks Julie's credibility. Peters argues that Kerry was never Peters' client and that Kerry also is not credible.
Clear and convincing evidence is that amount of evidence which produces in the trier of fact a firm belief or conviction about the existence of a fact to be proved.[4] Clear and convincing evidence means more than a preponderance but less than evidence beyond a reasonable doubt.[5] The record supports the referee's findings by clear and convincing evidence that Peters violated DR 6-101 and § 3-501.3 by failing to act competently and with reasonable diligence and promptness in responding to Julie's questions about the second payment from the TSP account. The referee found that Peters' "benign neglect" did not show an intent to prejudice or damage his client.
While this court conducts a de novo review and reaches a conclusion independent of the referee's findings, we give weight to the fact that the referee heard and observed the witnesses. Peters' core defense is that the complainants are not credible. The record supports a finding by clear and convincing evidence that Peters did not diligently and promptly investigate the delay in the second payment, which was not made until 22 months after the entry of the decree.

2. HERMAN'S GRIEVANCE
The formal charges in case No. S-07-960 were related to probate of the estate of Herman's parents and a civil suit against Kinder Morgan.
Peters' defense was that Herman was not credible. He claimed that he had not concluded some of the matters Herman had requested of him because those matters were set aside in favor of more pressing problems, with Herman's knowledge and consent.
Peters testified that he did not open an estate for Herman's parents, because she refused or declined to provide any funds. He told Herman he would need "a few hundred dollars" to cover filing fees, publication, and legal fees, but be did not send Herman a letter asking for the money, nor did he have any notes in his file to indicate that he had discussed the fee request. He did not recall sending any correspondence to Herman regarding the estate.
The record supports the referee's findings by clear and convincing evidence that Peters violated DR 6-101 and § 3-501.3 by failing to act competently and with reasonable diligence and promptness in opening the estate of Herman's parents and transferring the real property to her.
The referee also found by clear and convincing evidence that Peters violated § 3-501.4 by failing to keep Herman reasonably informed about the status of the estate. We agree. The referee found that Peters did not violate §§ 3-501.15 and 3-501.16 by failing to properly hold the original wills of Herman's parents. We agree. Herman conceded at the hearing that the original wills could have been misplaced while they were in her possession.
*303 Count II of the formal charges relates to the civil lawsuit against Kinder Morgan. Peters filed the suit on December 10, 2004, seeking judgment of $11,875. On January 19, 2005, Kinder Morgan's attorney sent a fax stating that the company wished to discuss an early resolution of the matter. Peters failed to respond to several messages about the matter and failed to respond to Kinder Morgan's requests for production of documents over a period of more than 1 year. Herman eventually terminated her attorney-client relationship with Peters.
Peters blamed the lack of communication on Herman, stating that he tried to return her calls, but that she was not home. He could not corroborate his testimony that he had provided Herman with copies of documents. Nor did he have records to support his claim that he communicated with Herman by telephone. Peters had no notations on his day planner to indicate any telephone calls to Herman, Kinder Morgan, or cocounsel.
The record supports the referee's finding by clear and convincing evidence that Peters violated § 3-501.4 by failing to keep Herman reasonably informed about the status of the lawsuit against Kinder Morgan and that Peters violated DR 6-101 and § 3-501.3 by failing to act competently and with due diligence.

3. RESOLUTION
A proceeding to discipline an attorney is a trial de novo on the record.[6] In attorney discipline and admission cases, this court reviews recommendations de novo on the record, reaching a conclusion independent of the referee's findings. However, when credible evidence is in conflict on material issues of fact, the court considers and may give weight to the fact that the referee heard and observed the witnesses and accepted one version of the facts rather than another.[7]
We reject Peters' attack on the credibility of his clients. In State ex rel. NSBA v. Kirshen,[8] this court stated:
A lawyer, with the great responsibilities that that position requires, should not disparage his clients or those for whose benefit he is purportedly acting, and hide behind their alleged faults to excuse his own ineptitude. Not only is such an approach unmannerly and unseemly, it is not recognized as a defense to disciplinary matters. If a lawyer accepts a case, that case must be handled professionally. If, due to personal relationship problems, the lawyer cannot handle his responsibility, the lawyer must withdraw and turn the matter over to a lawyer who has the competence and integrity to conclude the legal matter properly.
We are presented with formal charges based on complaints from two clients involving several different events. This court has held that cumulative acts of attorney misconduct are distinguishable from isolated incidents, therefore justifying more serious sanctions.[9]
Peters has previously been disciplined by this court. In 2002, he received a private reprimand. In January 2005, Peters was publicly reprimanded after entering *304 into a conditional admission that he violated DR 1-102(A)(1) (violate disciplinary rule), DR 1-102(A)(5) (engage in conduct that is prejudicial to administration of justice), and DR 6-101(A)(2) (handle legal matter without preparation adequate in circumstances).[10] As part of the discipline, we ordered that Peters be placed on probation for 1 year, during which he was not to accept any bankruptcy cases, and he was required to complete 15 hours of continuing legal education in the area of bankruptcy law.
In the present case, the referee found it troubling that this is the third time Peters has been found guilty of neglect and failure to act with reasonable diligence. We agree. In fact, Peters was on disciplinary probation during the period that he was representing Julie and Herman. Yet, he failed to keep his clients informed of the status of their cases or to diligently pursue their cases.
The referee reviewed mitigating factors presented by Peters, which included a record of his community involvement. However, the referee noted that the community service might have contributed to Peters' failure to diligently represent his clients.
The referee recommended that Peters be suspended for 60 days. The Counsel for Discipline requests a suspension of 1 year. In evaluating attorney discipline cases, this court considers aggravating and mitigating circumstances, the attorney's conduct underlying the charges and throughout the proceeding, and the propriety of a sanction with the sanctions imposed in similar cases.[11]
The Counsel for Discipline points to State ex rel. Counsel for Dis. v. Wadman[12] as a case similar to the one at bar. There, the attorney failed to attend a hearing on a summary judgment motion and the client's case was dismissed. The attorney did not inform the client of the dismissal. In a second case, the attorney neglected the matter and did not file the action within the time allowed by the statute of limitations. The attorney had been the subject of two prior disciplinary proceedings generally involving the neglect of three separate clients' matters while he was in private practice. He had been a practicing attorney for only 4 years at the time he closed his private practice and went to work as an in-house counsel. We suspended the attorney from the practice of law for 6 months.
Peters is an experienced lawyer who has been in private practice since 1973. In the case of Julie, Peters failed to use the correct wording in the divorce decree to effectuate the disbursement of the TSP account. When the problem was brought to his attention, he failed to take the necessary steps to resolve it. According to Julie, she and her ex-husband, Kerry, repeatedly contacted Peters and he still took no action. After a grievance was filed against Peters, he prepared an order that resolved the issue.
As for the matters presented by Herman, Peters failed to open estate proceedings, even after 6 years had passed, and he failed to keep Herman informed about the activities occurring in the Kinder Morgan case. A second attorney resolved the matter within months after Peters was discharged.
*305 Each attorney discipline case must be evaluated individually in light of its particular facts and circumstances.[13] For purposes of determining the proper discipline of an attorney, this court considers the attorney's acts both underlying the events of the case and throughout the proceeding.[14] The determination of an appropriate penalty to be imposed on an attorney in a disciplinary proceeding also requires the consideration of any aggravating or mitigating factors.[15] The only mitigating factor presented by Peters is his community involvement.
Taking into consideration that Peters has previously been reprimanded privately and publicly for similar actions, we believe a suspension of 60 days is too lenient. We therefore impose a 6-month period of suspension.

VI. CONCLUSION
We find by clear and convincing evidence that Peters violated DR 6-101(A)(3) and § 3-501.3 with respect to Julie; DR 6-101(A)(3) and §§ 3-501.3 and 3-501.4(a)(3) and (4) with respect to the estate of Herman's parents, and DR 6-101(A)(3) and §§ 3-501.3 and 3-501.4(a)(3) and (4) with respect to Herman's case against Kinder Morgan. It is the judgment of this court that Peters be suspended from the practice of law for a period of 6 months, effective immediately.
Peters shall comply with Neb. Ct. R. § 3-316, and upon failure to do so, he shall be subject to punishment for contempt of this court. Upon reinstatement, Peters shall engage an attorney to monitor his practice for a period of 1 year. Peters shall pay all costs associated with this monitoring. Furthermore, Peters is directed to pay costs and expenses in accordance with Neb.Rev.Stat. §§ 7-114 and 7-115 (Reissue 2007) and Neb. Ct. R. §§ 3-310(P) and 3-323 within 60 days after an order imposing costs and expenses, if any, is entered by this court.
JUDGMENT OF SUSPENSION.
NOTES
[1] State ex rel. Counsel for Dis. v. Switzer, 275 Neb. 881, 750 N.W.2d 681 (2008).
[2] State ex rel. Counsel for Dis. v. Scott, 275 Neb. 194, 745 N.W.2d 585 (2008).
[3] See brief for respondent at 34.
[4] State ex rel. NSBA v. Roubicek, 225 Neb. 509, 406 N.W.2d 644 (1987).
[5] Id.
[6] State ex rel. Counsel for Dis. v. Switzer, supra note 1.
[7] State ex rel. Counsel for Dis. v. Scott, supra note 2.
[8] State ex rel. NSBA v. Kirshen, 232 Neb. 445, 474, 441 N.W.2d 161, 178 (1989).
[9] State ex rel. Counsel for Dis. v. Wadman, 275 Neb. 357, 746 N.W.2d 681 (2008), citing State ex rel. Counsel for Dis. v. Sipple, 265 Neb. 890, 660 N.W.2d 502 (2003).
[10] See State ex rel. Counsel for Dis. v. Peters, 269 Neb. 162, 690 N.W.2d 629 (2005), modified 269 Neb. 577, 694 N.W.2d 203.
[11] See State ex rel. Counsel for Dis. v. Barnes, 275 Neb. 914, 750 N.W.2d 668 (2008).
[12] State ex rel. Counsel for Dis. v. Wadman, supra note 9.
[13] State ex rel. Counsel for Dis. v. Davis, 276 Neb. 158, 760 N.W.2d 928 (2008).
[14] Id.
[15] Id.