For the reasons stated, we hold that the district court did not abuse its discretion in denying the motion for CERA testing of the shell casings. Young failed to present evidence establishing that CERA testing was a new DNA test capable of producing noncumulative, exculpatory evidence and that the test was effectively unavailable at the time of his 2009 trial.

## CONCLUSION

For the reasons stated herein, we affirm the district court's denial of Young's amended motion for DNA testing.

AFFIRMED.

———————————

State of Nebraska ex rel. Counsel for Discipline
of the Nebraska Supreme Court, relator,
v. Stephen L. Smith, respondent.
___ N.W.2d ___

Filed March 28, 2014.    No. S-07-397.

1. **Disciplinary Proceedings: Appeal and Error.** In attorney discipline and admission cases, the Nebraska Supreme Court reviews recommendations de novo on the record, reaching a conclusion independent of the referee's findings. When credible evidence is in conflict on material issues of fact, the court considers and may give weight to the fact that the referee heard and observed the witnesses and accepted one version of the facts rather than another.

2. **Disciplinary Proceedings.** The Nebraska Supreme Court, as the court which disbars a lawyer, also has the inherent power to reinstate him or her to the practice of law.

3. ____. In considering an application for reinstatement to the practice of law, the Nebraska Supreme Court owes a solemn duty to protect the public and the legal profession, which consideration must be performed without regard to feelings of sympathy for the applicant.

4. ____. A mere sentimental belief that a disbarred lawyer has been punished enough will not justify his or her restoration to the practice of law. The primary concern is whether the applicant, despite the former misconduct, is now fit to be admitted to the practice of law and whether there is a reasonable basis to believe that the present fitness will permanently continue into the future.

5. **Disciplinary Proceedings: Proof.** A disbarred attorney has the burden of proof to establish good moral character to warrant reinstatement. The applicant must carry this burden by clear and convincing evidence.

6. ____: ____. The proof of good character must exceed that required under an original application for admission to the bar because it must overcome the former adverse judgment of the applicant's character.

7. ____: ____. The more egregious the underlying misconduct, the heavier an applicant's burden to prove his or her present fitness to practice law.

Original action. Judgment of reinstatement.

Kent L. Frobish, Assistant Counsel for Discipline, for relator.

Stephen L. Smith, pro se.

Heavican, C.J., Wright, Connolly, Stephan, McCormack, Miller-Lerman, and Cassel, JJ.

Per Curiam.

## INTRODUCTION

Stephen L. Smith was disbarred in 2008. He filed a petition for reinstatement on March 11, 2013. Following a hearing, the referee recommended that the petition for reinstatement be denied. For the reasons stated below, we grant Smith's petition.

## FACTUAL BACKGROUND

Smith was admitted to the practice of law in 1994, and was a solo practitioner in Omaha, Nebraska. Smith was retained by Thomas Kawa in 2005. In 2006, Kawa filed a grievance against Smith, alleging that Smith had not provided him an accounting of an advance payment made by Kawa.

Smith neglected to respond to the grievance for some time, and formal charges were filed against him. Though Smith eventually responded, his responses were both incomplete and not prompt. The Counsel for Discipline requested that this court grant a motion for judgment on the pleadings. We did so and, following briefing and argument, disbarred Smith on March 7, 2008. A more complete recitation of the underlying facts can be found in our opinion disbarring Smith.[1]

---

[1] *State ex rel. Counsel for Dis. v. Smith*, 275 Neb. 230, 745 N.W.2d 891 (2008).

On March 11, 2013, Smith filed a petition for reinstatement. This court appointed a referee, and a hearing was held on Smith's petition. The evidence presented at the hearing included Smith's testimony, six letters of recommendation, a letter from a psychologist, a certificate of completion for continuing legal education relating to trust accounts, and a Douglas County District Court order and Nebraska Court of Appeals memorandum opinion, case No. A-09-611 filed April 23, 2010, relating to a suit filed by Smith against Kawa.

In his testimony, Smith gave a narrative generally explaining that his failure to respond to the initial charges was primarily due to the fact that he knew he did not have the proper records to do so. Smith indicated in his testimony that if the full story regarding the incident with Kawa had been known at the time of the formal charges, Smith might not have been disbarred. But Smith also takes full responsibility for his failings in not keeping proper trust account records and in not properly responding to the grievance and charges against him.

Smith indicated that he had a mental health evaluation done following his disbarment and that the doctor recommended medication, counseling, and further testing. Smith admits that he did none of these things. He testified that he did not take the recommended medication because he did not feel it was necessary. He stated that the symptoms he was experiencing were situational and that he felt they would improve over time.

Smith also testified that he periodically met with an acquaintance who was a psychologist to "discuss[] things." As for the testing, there was an indication from the record that he was also informed by the acquaintance psychologist that it would not be beneficial.

One exhibit is a letter from that psychologist who indicated that the depression Smith suffered from at the time of disbarment was a "normal reaction" and that Smith "indicated that he has addressed the issues for which he was disbarred. Such actions show he moved out of the depression and worked toward his future."

In his testimony, Smith indicated that he had spent the last 5 years working with his wife, who owned and operated a

restaurant and a property management business. Smith testified that his job involved legal aspects, though he never acted as an attorney. He also testified that he had completed a class on trust account management. He testified that he knew he would not have the same problems in the future and that he has a "better idea of how to keep clear and accurate records."

The Counsel for Discipline presented no evidence and did not object to Smith's petition. At the hearing, the Counsel for Discipline did not specifically request that any conditions be placed on Smith's reinstatement; at oral argument, the Counsel for Discipline suggested that Smith be supervised for a period of time following any reinstatement. Following the hearing, the referee recommended that Smith's petition be denied.

Smith now asks this court to grant his petition for reinstatement. The Counsel for Discipline agrees that the petition should be granted.

## STANDARD OF REVIEW

[1] In attorney discipline and admission cases, we review recommendations de novo on the record, reaching a conclusion independent of the referee's findings.[2] When credible evidence is in conflict on material issues of fact, however, we consider and may give weight to the fact that the referee heard and observed the witnesses and accepted one version of the facts rather than another.[3]

## ANALYSIS

[2-4] As the court which disbarred Smith, we have the inherent power to reinstate him to the practice of law.[4] We recognize, however, that in considering an application for reinstatement to the practice of law, this court owes a solemn duty to protect the public and the legal profession, which consideration must be performed without regard to feelings of sympathy for

---

[2] *State ex rel. Counsel for Dis. v. Scott*, 275 Neb. 194, 745 N.W.2d 585 (2008).

[3] *Id.*

[4] See *id.*

the applicant.[5] A mere sentimental belief that a disbarred lawyer has been punished enough will not justify his or her restoration to the practice of law. The primary concern is whether the applicant, despite the former misconduct, is now fit to be admitted to the practice of law and whether there is a reasonable basis to believe that the present fitness will permanently continue into the future. In short, reinstatement after disbarment is difficult.[6]

[5-7] A disbarred attorney has the burden of proof to establish good moral character to warrant reinstatement.[7] The applicant must carry this burden by clear and convincing evidence.[8] The proof of good character must exceed that required under an original application for admission to the bar because it must overcome the former adverse judgment of the applicant's character.[9] It naturally follows that the more egregious the underlying misconduct, the heavier an applicant's burden to prove his or her present fitness to practice law.[10]

In concluding that Smith's petition should be granted, we examine our prior case law. In *State ex rel. Counsel for Dis. v. Scott*,[11] we had previously suspended the petitioner for 1 year for deliberately lying to a court and, 1 week later, disbarred him following his conviction for filing a false tax return. He filed for reinstatement 8 years later.

This court denied his petition. We noted that after the petitioner was released from prison, he had taken "positive steps" to "reestablish himself in the community."[12] We also noted that "he now takes responsibility for his past mistakes and appears to be remorseful."[13] But we still found the "evidence

---

[5] *Id.*

[6] *Id.*

[7] *Id.*

[8] See *id.*

[9] *Id.*

[10] *Id.*

[11] *Id.*

[12] *Id.* at 203, 745 N.W.2d at 592.

[13] *Id.*

of [the petitioner's] present moral character to be insufficient to overcome the heavy burden imposed by his past egregious misconduct."[14]

In denying the petition, we distinguished the petitioner's case from others by noting that the petitioner had a "significantly greater history of dishonest conduct."[15] We also noted that the petitioner had failed to make restitution to the Internal Revenue Service, despite the fact that he still owed between $300,000 and $400,000.[16]

We also denied a petition for reinstatement in *State ex rel. Counsel for Dis. v. Mellor*.[17] There, the petitioner was disbarred following a federal felony conviction for possession of child pornography. We noted that following his release from prison, the petitioner sought treatment with a counselor and was making "'excellent' progress."[18] But we noted two incidents, which the petitioner's therapist described as "'slip[s]'" caused by stress, and expressed concern, observing that the "practice of law is a profession which can be attended by significant stress."[19]

We also shared "the referee's concern that the record include[d] no testimony or written support from lawyers or judges regarding [the petitioner's] present character and fitness to practice law."[20] We further concluded that the petitioner had not "demonstrated that he [was] currently competent to practice law in Nebraska," as prior to disbarment, the petitioner's law practice in Nebraska was rather limited and he had twice failed the Kansas bar examination.[21]

---

[14] *Id.*

[15] *Id.*

[16] *Scott, supra* note 2.

[17] *State ex rel. Counsel for Dis. v. Mellor*, 271 Neb. 482, 712 N.W.2d 817 (2006).

[18] *Id.* at 484, 712 N.W.2d at 819.

[19] *Id.* at 486, 712 N.W.2d at 821.

[20] *Id.*

[21] *Id.* at 488, 712 N.W.2d at 822.

But we granted a petition for reinstatement in *State ex rel. NSBA v. Kinney.*[22] There, the petitioner was disbarred after embezzling about $23,000 from his employer's law firm. And several years prior, the petitioner had taken about $20,000 in fees, which fees were later repaid. About 20 years after his disbarment, the petitioner sought reinstatement.

In granting his petition, we noted that following disbarment, the petitioner had sought treatment for alcohol, drugs, and gambling addictions, and then lived in a halfway house. He also participated in Alcoholics Anonymous meetings. The petitioner acknowledged having an occasional glass of wine with friends, but had no recurrence of his previous alcohol problems.

In addition to treatment, the petitioner had paid restitution to his former employer. And his work history following disbarment was related to his legal background and showed that he was a "responsible and trusted employee."[23] The petitioner was also involved with various charitable organizations. Two persons testified as to the petitioner's good moral character, and another 11 individuals, including two lawyers, wrote letters supporting his reinstatement. Finally, we observed that the petitioner had taken full responsibility for his past mistakes.

Because the petitioner had not practiced law in 20 years, this court required him to pass the bar examination as a condition to reinstatement. We were concerned with his knowledge of the law, despite the fact that he had been working in the legal field and had attended continuing legal education.

We conclude that Smith should be reinstated to the practice of law. While Smith clearly holds some animosity with respect to the circumstances resulting in his disbarment, he has accepted responsibility for his role in those events, notably for his failure to respond to the inquiries of the Counsel for Discipline and for not keeping more accurate trust account records. We also note that Smith was convicted of no crime

---

[22] *State ex rel. NSBA v. Kinney*, 274 Neb. 412, 740 N.W.2d 607 (2007).

[23] *Id.* at 417, 740 N.W.2d at 612.

and that results of separate litigation show that Kawa's allegations against Smith were without merit.

The record shows that Smith's failure to respond to the Counsel for Discipline was due at least in part to the fact that he was depressed. Smith sought some treatment for this condition, though he declined to take medication. The record indicates that this depression was situational and has lifted since the time of his disbarment.

Since disbarment, Smith has remained actively working with his wife's company, using skills he attained as an attorney, though not practicing law. Moreover, Smith has taken a course in trust account management. And the record includes several letters recommending Smith's reinstatement written by three judges, one attorney, two doctors, and Smith's wife. While such steps alone are not enough to mandate reinstatement, they certainly support the conclusion that reinstatement might well be appropriate.

Finally, and notably, the Counsel for Discipline does not object to Smith's reinstatement.

Upon due consideration, we grant Smith's petition for reinstatement, subject to 2 years of probation and monitoring. In addition, because trust account practices were an issue in Smith's disbarment and he proposes to reenter solo practice, we also condition Smith's reinstatement upon a requirement that Smith retain, at his expense, an accountant to audit his trust account every 6 months during his probationary period, with the audit results to be submitted to the Counsel for Discipline.

## CONCLUSION

We conclude that Smith has met his burden of showing by clear and convincing evidence that, subject to the above conditions, his license to practice law should be reinstated. His application is granted, and costs are taxed to Smith.

Judgment of reinstatement.