750 N.W.2d 668 (2008)
275 Neb. 914
STATE of Nebraska ex rel. COUNSEL FOR DISCIPLINE OF the NEBRASKA SUPREME COURT, Relator,
v.
Timothy B. BARNES, Respondent.
No. S-07-709.
Supreme Court of Nebraska.
June 13, 2008.
*669 John W. Steele, Assistant Counsel for Discipline, for relator.
No appearance for respondent.
*670 HEAVICAN, C.J., and WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.
PER CURIAM.
The Counsel for Discipline of the Nebraska Supreme Court charged respondent, Timothy B. Barnes, with violating his oath of office under Neb.Rev.Stat. § 7-104 (Reissue 1997) and the following provisions of the Nebraska Rules of Professional Conduct: rule 1.3 (duty to act with reasonable diligence and promptness in representing client), rule 1.4 (duty to promptly communicate with client about means of accomplishing client's goals, status of matter undertaken, and client's reasonable requests for information), and rule 1.16 (duty to protect client's interest upon termination of representation). The charges stemmed from Barnes' negligent handling of his client's legal matter and his failure to communicate with the client.
Barnes was retained by an animal welfare group, Hi Plains Animal Welfare Society (HiPAWS), to help it obtain nonprofit corporation status. After HiPAWS retained Barnes, he failed to complete the matter and failed to notify HiPAWS that he was unable to do so. He did not return any of the money HiPAWS paid for his fee and expenses until after the Counsel for Discipline had filed formal charges against him. The evidence does not show that he has repaid the full amount of his unearned fee.
The referee found clear and convincing evidence to support the formal charges. He recommended that Barnes be publicly censured and reprimanded. We agree with the referee's findings that the formal charges are supported by clear and convincing evidence. But we conclude that the recommendation of a public reprimand is not an appropriate sanction under these facts. We suspend Barnes from the practice of law for 30 days, subject to the conditions stated below.

BACKGROUND
Barnes was admitted to practice law in Nebraska in August 2003. From July 2003 to March 2005, he worked for a law firm in Mitchell, Nebraska. After March 2005, he was a solo practitioner in Scottsbluff, Nebraska. His practice primarily involved domestic relations, criminal law, and serving as a guardian ad litem. At some point, he was hired part time as a deputy Kimball County Attorney.
Most of these events regarding the formal charges took place in 2006 while Barnes was a solo practitioner in Scottsbluff. The referee found that in February 2006, HiPAWS retained Barnes and paid him a flat fee of $1,500 and $500 for expenses to obtain tax-exempt status for HiPAWS under I.R.C. § 501(c)(3) (2000). Barnes put the $500 in his trust account and the $1,500 in his business account. He had never completed a § 501(c)(3) application by himself. He helped with an application while working for the Mitchell law firm, but his work was limited to proofreading. He knew that he would also need to file articles of incorporation for HiPAWS, and both parties understood that his professional fee covered this filing.
HiPAWS sent documentation to Barnes about its group when it paid him $2,000 in February 2006, but he did not initially request any further documentation. In May, after HiPAWS attempted to contact Barnes, he e-mailed HiPAWS to set up a meeting. He did not, however, attend that meeting. He also failed to attend a rescheduled meeting in July after learning that he was required to be at a court hearing instead. Barnes finally met with HiPAWS members on July 20. He requested further documentation, which the *671 members later sent to him. He also stated that he would need several more weeks to complete the § 501(c)(3) application but did not specify a reason for the delay. At the end of July, Barnes closed his office, terminated his e-mail account, and moved to Utah. He moved there with his family to take advantage of a special education program in Salt Lake City for his 9-year-old daughter. In August, he was offered a job in Utah; he currently works there as a prosecutor. He did not inform HiPAWS of his move.
In September 2006, Barnes sent HiPAWS a partially completed § 501(c)(3) application and requested further information. He did not send paperwork for filing articles of incorporation. HiPAWS did not immediately respond to Barnes's request for more information because HiPAWS wanted clarification. A member attempted to contact Barnes by e-mail and telephone and finally obtained his new contact information through the bar association. In November, after speaking to Barnes, a HiPAWS member sent him the additional information he had requested by mail. Barnes, however, never completed the application despite many e-mails from HiPAWS.
After moving to Utah, Barnes and his family began to have health problems, and he put the HiPAWS application "on the backburner." Barnes testified that from late 2006 until March 2007, he was having unexplained, debilitating headaches. He stated that he underwent extensive testing, including MRFs, CT scans, and even a spinal tap, to ensure he did not have an aneurysm. In 2007, his wife was dealing with mental health problems when she became unexpectedly pregnant with their fourth child, who was born in September 2007. Besides his oldest daughter's special needs, his 5-year-old daughter was having growth problems and was undergoing chromosome testing for genetic disorders. Barnes also underwent surgery for an undisclosed reason in August 2007. But despite these health problems, he never informed HiPAWS that he could not do the work, because he still believed that he could.
In December 2006 and January 2007, a HiPAWS member contacted the Counsel for Discipline. Afterward, in January, the member informed Barnes that HiPAWS would proceed with its complaint unless he finished the project or refunded its payment of fees and expenses. The Counsel for Discipline filed formal charges against Barnes in June 2007. In August, Barnes refunded to HiPAWS $1,000 of the money it paid him for his fee and the $500 it paid him for expenses; he also promised to repay the remaining $500 of his unearned fee. But he had not done so when the referee hearing occurred in October.
At the referee's hearing, Barnes testified that he had initially contacted a couple of attorneys about the § 501(c)(3) application but that their responses did not help him. He did not attempt to contact a tax professional; nor did he contact anyone at his former law firm because he did not feel comfortable calling anyone there. He believed that he could learn the process on his own.
Barnes testified that he did not refund the $500 for expenses immediately in January 2007 because he was planning to write one check to HiPAWS for the full amount. He also stated that he had not yet repaid the remaining $500 because his finances were "strapped" following his surgery and the birth of his fourth child. But he testified that he planned to repay the $500 within a couple of months.
The referee found Barnes had fully cooperated with the Counsel for Discipline, had admitted most of the allegations, had expressed remorse over his failure to *672 complete the application, and intended to repay the remaining $500. The referee further found that there was clear and convincing evidence to support the formal charges. The referee specifically found that Barnes had failed to take reasonable steps to protect his client's interest, such as giving reasonable notice of his termination of representation, allowing time for employment of other counsel, and refunding all advanced payment of fees or expenses that he had not earned or incurred.
Regarding mitigating considerations, the referee found that Barnes had made a good faith effort to do the work because the application was two-thirds completed. He also found that Barnes had returned the documentation HiPAWS had provided. Finally, he found that Barnes had left Nebraska for personal and family issues and was now employed as a prosecutor within the realm of his experience and training. But the referee characterized Barnes as "an unfortunate example of an inexperienced solo practitioner entering into a project and representation which was beyond his legal experience and training" who had failed to seek the assistance of attorneys who could have helped him.
The referee recommended that this court publicly censure and reprimand Barnes.

ASSIGNMENT OF ERROR
The Counsel for Discipline takes exception to the referee's recommendation of a public censure and reprimand under these facts.

STANDARD OF REVIEW
In attorney discipline and admission cases, we review recommendations de novo on the record, reaching a conclusion independent of the referee's findings.[1] When credible evidence is in conflict on material issues of fact, however, we consider and give weight to the fact that the referee heard and observed the witnesses and accepted one version of the facts rather than another.[2]

ANALYSIS
Barnes has not filed exceptions to the referee's report. Besides its exception to the referee's recommendation, the Counsel for Discipline also takes exception to a minor misstatement in the referee's findings of fact. We agree the record clearly shows the statement was an error and have corrected it. We find clear and convincing evidence in the record that Barnes has violated his oath of office as an attorney under § 7-104 and the following provisions of the Nebraska Rules of Professional Conduct: rules 1.3, 1.4, and 1.16.
Under Neb. Ct. R. of Discipline 4 (rev.2004), we may consider and impose the following public sanctions for attorney misconduct: (1) disbarment; (2) suspension for a fixed period; (3) probation in lieu of or subsequent to suspension, on such terms as the court may designate; (4) censure and reprimand; or (5) temporary suspension.[3] To determine whether and to what extent discipline should be imposed in a lawyer discipline proceeding, we consider the following factors: (1) the nature of the offense, (2) the need for deterring others, (3) the maintenance of the reputation of the bar as a whole, (4) the protection of the public, (5) the attitude of the offender generally, and (6) the offender's *673 present or future fitness to continue in the practice of law.[4]
We evaluate each attorney discipline case individually, in light of its particular facts and circumstances.[5] We consider aggravating and mitigating circumstances, as well as the attorney's conduct underlying the charges and throughout the proceeding.[6] In addition, we consider the propriety of a sanction with the sanctions imposed in similar cases.[7]
The evidence shows that Barnes seriously neglected and failed to complete a matter entrusted to him and that his failure to promptly pursue the matter adversely affected his client's interests. A HiPAWS member testified that the group decided not to pursue the § 501(c)(3) application after its money was refunded because another animal welfare society had since been organized in the county. In addition, we note that although Barnes did not appear before this court, the Counsel for Discipline reported that Barnes has still not repaid the remaining $500 of his unearned fee.
As mitigating factors, we recognize that during some of the time Barnes neglected his client's legal matter, he was contending with a series of personal and family health issues that undoubtedly caused him mental and financial stress. We note that he cooperated with the Counsel for Discipline, admitted most of the allegations in the formal charges, and acknowledged responsibility for his actions. There is also no record of other complaints against Barnes, and he is no longer engaged in the private practice of law.
Despite Barnes' personal problems, however, we find troubling his failure to seek assistance on a matter about which he had little experience. This failure occurred before the bulk of his personal and family health problems began, and those problems were not so severe as to totally excuse his failure to promptly communicate with his client. Finally, in a similar case, we suspended an attorney who failed to return an unearned portion of a client's fee until after the client filed a complaint against him.[8]
After a de novo review, it is the judgment of this court that Barnes be suspended from the practice of law for 30 days, beginning immediately. Barnes' license to practice law shall be reinstated at the end of the 30-day suspension, provided that he has complied with Neb. Ct. R. of Discipline 16 (rev.2004) and further provided that he has repaid to HiPAWS the remaining portion of his unearned fee. Barnes is directed to pay costs and expenses in accordance with Neb.Rev.Stat. §§ 7-114 and 7-115 (Reissue 1997) and Neb. Ct. R. of Discipline 10(P) (rev.2005) and 23 (rev.2001) within 60 days after an order imposing costs and expenses, if any, is entered by the court.
JUDGMENT OF SUSPENSION.
NOTES
[1] State ex rel. NSBA v. Kinney, 274 Neb. 412, 740 N.W.2d 607 (2007).
[2] Id.
[3] See State ex rel. Counsel for Dis. v. Wadman, 275 Neb. 357, 746 N.W.2d 681 (2008).
[4] Id.
[5] See id.
[6] See id.
[7] See State ex rel. Counsel for Dis. v. Riskowski, 272 Neb. 781, 724 N.W.2d 813 (2006).
[8] See State ex rel. Counsel for Dis. v. Hynes, 262 Neb. 307, 631 N.W.2d 499 (2001).