276 Neb. 741
STATE OF NEBRASKA EX REL. COUNSEL FOR DISCIPLINE OF THE NEBRASKA SUPREME COURT, RELATOR,
v.
JOHN E. HUBBARD, RESPONDENT.
No. S-07-718.
Supreme Court of Nebraska.
Filed November 21, 2008.
Kent L. Frobish, Assistant Counsel for Discipline, for relator.
John R. Douglas and David A. Blagg, of Cassem, Tierney, Adams, Gotch & Douglas, for respondent.
HEAVICAN, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, and McCORMACK, JJ.
PER CURIAM.

NATURE OF CASE
The Counsel for Discipline of the Nebraska Supreme Court charged attorney John E. Hubbard with violations of the Nebraska Rules of professional Conduct (Rules) and his oath of office as an attorney for his cocaine use and subsequent arrest. The referee determined that Hubbard's conduct warranted sanctions and recommended that Hubbard be publicly reprimanded, be suspended from the practice of law for 1 year, be placed on probation for 5 years, and be subject to work-product reviews. Hubbard appeals the imposition of sanctions and argues that the referee's recommended sanctions are too severe.

BACKGROUND
Hubbard has been licensed to practice law in the State of Nebraska since 1973. He practiced with several law firms in Nebraska until early 2006. He joined another firm in November 2007.
In December 2005, Hubbard was preparing to retire. He had recently separated from his wife of 35 years. One night, he called an escort service, and the service sent a 20-yearold female, who introduced Hubbard to crack cocaine. He continued to meet the escort and used cocaine when he was with her.
Realizing he was addicted to cocaine, Hubbard voluntarily entered a 30-day inpatient program in April 2006. Upon returning from the inpatient program, Hubbard moved into a halfway house, but he moved out after only 2 weeks and again began seeing the escort and using cocaine. During this time, Hubbard paid for her car insurance and cellular telephone, bought clothes for her, and gave her money whenever she requested it. He also planned to help her rent an apartment so she could move out of her parents' house.
Hubbard continued to meet with the escort and use cocaine until the end of the summer, when he checked himself into another treatment center. He remained in contact with the escort and sent money to her while he was in treatment. Hubbard stayed at the center for 30 days and then moved in with his daughter at the end of August 2006.
Within 2 days of Hubbard's return from the treatment center, the escort called Hubbard and he resumed seeing her and using cocaine. This continued until September 12, 2006, when Sarpy County sheriff's deputies arrested Hubbard and the escort in a motel room for possession of cocaine. Hubbard was charged with possession of a controlled substance, a Class IV felony.[1] He ultimately pled guilty to attempted possession of a controlled substance, a Class I misdemeanor.[2] The court sentenced him to 2 years of supervised probation, 100 hours of community service work, and a $1,000 fine. The court also ordered him to complete a drug treatment program.
Hubbard finished the drug treatment program and a 52-week followup program. He attends Alcoholics Anonymous meetings four to five times per week and has a sponsor. He has also entered into a 3-year monitoring agreement with the Nebraska Lawyers Assistance Program (NLAP). His probation officer has a key to his apartment and inspects it occasionally. As an additional condition of his probation, Hubbard must submit to routine drug tests. He has not tested positive for any drug since his arrest.
Following Hubbard's arrest, the Counsel for Discipline filed formal charges on June 28, 2007, alleging a violation of his oath of office and a violation of Neb. Ct. R. of Prof. Cond. § 3-508.4. A hearing on these charges was held on January 24, 2008, before a court-appointed referee. On April 17, the referee filed a report and recommendation, finding that Hubbard violated the Rules and his oath of office as an attorney.
The referee recommended (1) placing Hubbard on probation for 5 years beginning on the date of the probation imposed in his criminal case and subject to the same terms as his criminal probation, (2) extending Hubbard's NLAP contract from 3 years to 5 years, (3) requiring Hubbard to report any contact or attempted contact with the former escort to NLAP and the Counsel for Discipline, (4) requiring mentored work-product reviews, (5) publicly reprimanding Hubbard, and (6) suspending Hubbard from the practice of law for 1 year. Hubbard contends the referee's recommended discipline is too severe.

ASSIGNMENTS OF ERROR
Hubbard asserts, summarized and restated, that the referee erred in finding that he violated § 3-508.4 of the Rules and that the referee erred in recommending a public reprimand, workproduct review, and a 1-year suspension.

STANDARD OF REVIEW
A proceeding to discipline an attorney is a trial de novo on the record.[3]

ANALYSIS
Section 3-508.4(b) states that it is professional misconduct for an attorney to "commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects." A comment to this section reads:
Many kinds of illegal conduct reflect adversely on fitness to practice law, such as offenses involving fraud and the offense of willful failure to file an income tax return. However, some kinds of offenses carry no such implication. Traditionally, the distinction was drawn in terms of offenses involving "moral turpitude." That concept can be construed to include offenses concerning some matters of personal morality, such as adultery and comparable offenses, that have no specific connection to fitness for the practice of law. Although a lawyer is personally answerable to the entire criminal law, a lawyer should be professionally answerable only for offenses that indicate lack of those characteristics relevant to law practice. Offenses involving violence, dishonesty, breach of trust or serious interference with the administration of justice are in that category. A pattern of repeated offenses, even ones of minor significance when considered separately, can indicate indifference to legal obligation.[4]
Formerly, the Code of Professional Responsibility (Code) governed attorney conduct. Under the Code, Canon 1, DR 1-102(A)(3), prohibited attorneys from engaging in illegal conduct involving moral turpitude and DR 1-102(A)(6) prohibited any other conduct that adversely reflected on a lawyer's fitness to practice law. Although the name and wording of the applicable regulations have changed, we are guided by the principles previously announced in our decisions under the Code.[5]
The removal of "moral turpitude" from the Rules indicates that the drafters did not intend for incidents of personal morality to be the grounds for professional liability. Instead, the intent is to sanction conduct that reflects on an attorney's honesty, trustworthiness, or fitness as a lawyer. When an attorney's illegal drug use affects a client, it unmistakably reflects on the attorney's honesty, trustworthiness, and fitness as a lawyer.[6] The outcome is less clear, however, when the drug use does not negatively impact a client, as in the case at bar.
In State ex rel. NSBA v. Matt,[7] an attorney, Paul G. Matt III, made arrangements for his personal friend to purchase cocaine. Matt never possessed cocaine and did not cause harm to any client; however, the referee emphasized that Matt's efforts enabled his friend to illegally purchase a controlled substance. The court found that Matt's actions adversely reflected upon his "fitness to practice law and constitute[d] a violation of the disciplinary rules as charged," in addition to the determination that his conduct involved moral turpitude.[8] Even though the case was decided under the superseded Code, the now-applicable Rules also contain a prohibition of conduct that reflects adversely on a lawyer's fitness to practice law. Therefore, Matt's conduct of arranging for his friend to purchase cocaine is a violation under both sets of disciplinary rules.
While Hubbard did not procure cocaine for the escort, he gave her money and paid for her car insurance, cellular telephone, and clothes during the time she was seeing him and providing him with illegal drugs. It can reasonably be inferred that the money given by Hubbard to the escort contributed to their illegal use of cocaine. We have considered the referee's report and recommendation, the findings of which have been established by clear and convincing evidence, and the applicable law and disciplinary rules. Upon due consideration of the record, the court finds that Hubbard's conduct adversely reflects on his fitness to practice law and is subject to sanctions under the Rules.
To determine whether and to what extent discipline should be imposed in a lawyer discipline proceeding, the Nebraska Supreme Court considers the following factors: (1) the nature of the offense, (2) the need for deterring others, (3) the maintenance of the reputation of the bar as a whole, (4) the protection of the public, (5) the attitude of the offender generally, and (6) the offender's present or future fitness to continue in the practice of law.[9]
The violation of any of the ethical standards relating to the practice of law, or any conduct which tends to bring the courts or legal profession into disrepute, constitutes grounds for suspension or disbarment.[10] Each attorney discipline case must be evaluated individually in light of its particular facts and circumstances[11]; however, the propriety of a disciplinary sanction must be considered with reference to the sanctions imposed in prior cases presenting similar circumstances.[12] Furthermore, the determination of an appropriate penalty to be imposed on an attorney requires consideration of any aggravating or mitigating factors.[13]
In the instant case, the referee properly and carefully considered all of these criteria when he recommended that Hubbard be suspended for 1 year, be placed on probation and subject to work-product review, and be publicly reprimanded. Hubbard repeatedly violated the law over a 9-month period by using cocaine. And while it is important that attorneys suffering from addiction get the help they need, it is also crucial to deter attorneys from using illegal drugs to begin with. In addition, Hubbard was known as a prominent Omaha attorney and his actions drew negative attention to the bar.
On the other hand, Hubbard has taken steps to ensure that these transgressions do not reoccur. He has completed a drug treatment program, attends Alcoholics Anonymous meetings four to five times per week, and has a sponsor. He is in a 3-year monitoring program with NLAP and submits to drug tests. We also consider Hubbard's abstention from the practice of law during his rehabilitation as a mitigating factor. His actions did not affect his representation of any clients.
This court has imposed periods of suspension in cases with underlying facts similar to the present case. In State ex rel. NSBA v. Matt,[14] the referee determined that Matt's actions enabled the sale and purchase of cocaine. Considering that he successfully completed pretrial diversion and was no longer involved with drugs, this court suspended Matt for 1 year. Similarly, in State ex rel. Counsel for Dis. v. Hughes,[15] an attorney obtained blank prescription forms and forged prescriptions to get narcotic pain medication. This court suspended Hughes for 6 months, after which time she could apply for reinstatement to the bar.[16]
Given the circumstances and mitigating factors present in Hubbard's case, we conclude that he should be suspended for a period of 9 months, after which time he may apply for reinstatement to the bar. We also find it appropriate to place Hubbard on probation for 5 years beginning the same date as his criminal probation and to extend his monitoring contract with NLAP from 3 years to 5 years. We agree with the parties that attorney review of Hubbard's work product is unnecessary.

CONCLUSION
We find by clear and convincing evidence that Hubbard violated § 3-508.4. It is the judgment of this court that Hubbard be suspended from the practice of law for a period of 9 months, effective immediately. After this period, Hubbard may apply for readmission to the bar. Upon readmission, his continued admission is subject to successful completion of the abovedescribed 5 years' probation and continued participation in the NLAP program.
Hubbard shall also comply with Neb. Ct. R. § 3-316, and upon failure to do so, he shall be subject to punishment for contempt of this court. Furthermore, Hubbard is directed to pay costs and expenses in accordance with Neb. Rev. Stat. §§ 7-114 and 7-115 (Reissue 2007) and Neb. Ct. R. §§ 3-310(P) and 3-323 within 60 days after an order imposing costs and expenses, if any, is entered by this court.
JUDGMENT OF SUSPENSION.
MILLER-LlERMAN, J., not participating.
NOTES
[1] See Neb. Rev. Stat. § 28-416(3) (Cum. Supp. 2006).
[2] See Neb. Rev. Stat. § 28-201(4)(e) (Cum. Supp. 2006).
[3] State ex rel. Counsel for Dis. v. Switzer, 275 Neb. 881, 750 N.W.2d 681 (2008).
[4] § 3-508.4, comment 2.
[5] See State ex rel. Counsel for Dis. v. Dortch, 273 Neb. 667, 731 N.W.2d 594 (2007).
[6] See, State ex rel. Counsel for Dis. v. Petersen, 272 Neb. 975, 725 N.W.2d 845 (2007); State ex rel. NSBA v. Brown, 251 Neb. 815, 560 N.W.2d 123 (1997); State ex rel. NSBA v. Miller, 225 Neb. 261, 404 N.W.2d 40 (1987).
[7] State ex rel. NSBA v. Matt, 213 Neb. 123, 327 N.W.2d 622 (1982).
[8] Id. at 126, 327 N.W.2d at 623.
[9] State ex rel. Counsel for Dis. v. Barnes, 275 Neb. 914, 750 N.W.2d 668 (2008).
[10] State ex rel. Counsel for Dis. v. Lopez Wilson, 262 Neb. 653, 634 N.W.2d 467 (2001).
[11] See State ex rel. Counsel for Dis. v. Widtfeldt, 269 Neb. 289, 691 N.W.2d 531 (2005).
[12] See State ex rel. Counsel for Dis. v. James, 267 Neb. 186, 673 N.W.2d 214 (2004).
[13] See State ex rel. Counsel for Dis. v. Dortch, supra note 5.
[14] State ex rel. NSBA v. Matt, supra note 7.
[15] State ex rel. Counsel for Dis. v. Hughes, 268 Neb. 668, 686 N.W.2d 588 (2004).
[16] Id.