## CONCLUSION

For the reasons explained above, O'Brien failed to present evidence of a genuine issue of material fact that the permissible reason of poor job performance articulated by BPS for his termination was a pretext; therefore, BPS is entitled to judgment as a matter of law. The Court of Appeals did not err when it affirmed the district court's order granting summary judgment in favor of BPS.

AFFIRMED.

———————————

STATE OF NEBRASKA EX REL. COUNSEL FOR DISCIPLINE
OF THE NEBRASKA SUPREME COURT, relator,
v. JAMES E. CONNOR, RESPONDENT.
___ N.W.2d ___

Filed December 12, 2014.    No. S-13-963.

1. **Disciplinary Proceedings: Appeal and Error.** In attorney discipline and admission cases, the Nebraska Supreme Court reviews recommendations de novo on the record, reaching a conclusion independent of the referee's findings.
2. **Disciplinary Proceedings.** To determine whether and to what extent discipline should be imposed in a lawyer discipline proceeding, the Nebraska Supreme Court considers the following factors: (1) the nature of the offense, (2) the need for deterring others, (3) the maintenance of the reputation of the bar as a whole, (4) the protection of the public, (5) the attitude of the respondent generally, and (6) the respondent's present or future fitness to continue in the practice of law.
3. ____. Each attorney discipline case must be evaluated individually in light of its particular facts and circumstances. In addition, the propriety of a sanction must be considered with reference to the sanctions imposed in prior similar cases.

Original action. Judgment of suspension.

Kent L. Frobish, Assistant Counsel for Discipline, for relator.

Thomas J. Anderson, of Thomas J. Anderson, P.C., L.L.O., and Tim J. Kielty for respondent.

HEAVICAN, C.J., WRIGHT, CONNOLLY, STEPHAN, MCCORMACK, MILLER-LERMAN, and CASSEL, JJ.

Per Curiam.

## I. NATURE OF CASE

The issue presented in this attorney discipline proceeding is what discipline should be imposed on James E. Connor, respondent, for violating certain provisions of the Nebraska Rules of Professional Conduct and his oath of office as an attorney. These violations occurred while respondent was serving as guardian and conservator for Geraldine Dell and as attorney for the personal representative of her estate.

The referee recommended a 90-day suspension of respondent's license to practice law without any subsequent period of probation. Respondent does not challenge the factual findings of the referee or the allegations in the formal charges, but takes two exceptions to the referee's report. Respondent takes exception to the referee's finding that posttraumatic stress disorder (PTSD) was not a mitigating factor and to the recommendation of a 90-day suspension of respondent's license to practice law.

Respondent's violations are undisputed, and in light of the various factors present in this case, we suspend respondent for a period of 30 days with a subsequent 1-year period of monitored probation.

## II. FACTS

On September 12, 1979, respondent was admitted to practice law in Nebraska, and he engaged in the private practice of law in Omaha, Nebraska, at all times relevant to this case. This disciplinary proceeding relates to formal charges originally filed on November 1, 2013, by the Counsel for Discipline of the Nebraska Supreme Court, relator, and amendments filed on December 26, 2013, and April 24, 2014.

Relator alleged that certain conduct by respondent from approximately 2005 to 2012 violated respondent's oath of office as an attorney and the Nebraska Rules of Professional Conduct. Count I alleged that respondent's acts and omissions during his guardianship and conservatorship of Dell violated Neb. Ct. R. of Prof. Cond. §§ 3-501.1 (competence), 3-501.3 (diligence), and 3-508.4 (misconduct). Count II alleged that respondent's acts and omissions during his

legal representation of the personal representative and residual beneficiary of Dell's estate, Thomas J. Hurst, violated §§ 3-501.1, 3-501.3, and 3-508.4, as well as Neb. Ct. R. of Prof. Cond. § 3-501.15 (safekeeping property).

The referee's hearing was held on February 27 and March 12, 2014. Testimony was offered from respondent, Hurst, Hurst's new attorney, and respondent's secretary, and a total of 56 exhibits were admitted into evidence. The substance of the referee's findings based on evidence adduced at the hearing and respondent's admissions of the allegations contained in the formal charges may be summarized as follows:

### 1. Count I

On January 24, 2003, respondent caused to be filed in the Douglas County Court a petition to appoint himself as temporary and permanent guardian and conservator for Dell, his cousin. The appointment came after Dell was found unconscious on the floor of her home and was hospitalized. Dell had never married and had no children. On February 28, the court appointed respondent as guardian and conservator for Dell. Following her hospitalization, Dell resided in several assisted living facilities and never again resided in her home. Respondent had authority to sell Dell's home in Omaha.

Respondent, as guardian and conservator, was ordered to file an inventory with the court within 90 days of his appointment. Respondent failed to file an inventory within the 90 days. In response, the court issued an order to show cause directing respondent to file the inventory by July 15, 2003. Respondent filed an inventory on July 25, which listed Dell's home at a value of $28,600, together with bonds, mutual funds, mortgages, notes, cash, and insurance totaling nearly $220,000. He failed to timely file annual accountings of the estate assets and annual reports of Dell's condition.

Dell died on February 5, 2006, but respondent did not file an application to terminate the guardianship and conservatorship until August 12, 2009. He did not timely file his final accounting, and over a period of several years, respondent repeatedly requested continuances of court hearings related to closing the estate.

## 2. Count II

Subsequent to Dell's death, respondent located her "Last Will and Testament," and on September 14, 2006, he filed an "Application for Informal Probate" in Douglas County Court. The will nominated Dell's friend, Margaret Fogerty, to serve as personal representative of the estate, and on September 21, Fogerty was so appointed by the court.

Respondent did not file an inventory for the estate until March 8, 2007. On the inventory, respondent again listed the estate's assets, including the house in Omaha, at approximately $220,000. Respondent and Fogerty opened an account for the estate at a bank in Omaha.

On April 25, 2007, Fogerty died, but respondent did not learn of her death for several months. After Fogerty's death, the successor personal representative named in Dell's will refused to serve. Respondent persuaded Hurst to serve as personal representative of the estate. Hurst accepted only on the condition that respondent assume all the duties and responsibilities of the personal representative and that Hurst not be required to write a "whole bunch of checks." Hurst is a second cousin to both Dell and respondent and is the residual beneficiary of Dell's estate. The court appointed Hurst as personal representative, and Hurst retained respondent as his attorney.

After respondent failed to appear at a scheduled hearing to close the estate on July 2, 2008, the court issued a show cause order directing respondent to close the estate by August 26. Respondent admitted that he repeatedly asked for continuances throughout 2008 and 2009 because he and Hurst were trying to renovate Dell's house for sale. Respondent admitted that he did not seriously turn his attention to the house until the spring of 2009.

By 2009, the house had become rundown and had severely depreciated in value. Realtors who appraised the house opined that it would take $35,000 to $45,000 to renovate and restore the property to a potential market value of $75,000 to $80,000. At respondent's suggestion, Hurst agreed to undertake renovations in preparation for sale. The project started in the summer of 2009 and was completed in May 2011, at which time the house sold for $72,000. Personal property was

removed from the house and placed in storage. Storage fees totaled $2,825.

Respondent used cash drawn from the estate checking account to pay for much of the renovation. When he prepared an accounting after the house was sold, he discovered an apparent shortfall between cash expenditures and receipts that he had obtained from the contractor.

Respondent failed to file an "Inheritance Tax Worksheet" until August 3, 2012, and the inheritance tax was not paid until September 6. The accrued penalty interest on the tax was $2,057.34. Respondent reimbursed the penalty interest when the estate was finally closed.

On October 8, 2012, Hurst dismissed respondent as his attorney, and in a December 18 grievance letter to relator, Hurst complained that it had taken more than 6½ years to close the estate, which had still not been closed at the time Hurst filed the complaint.

Hurst filed a "Petition for Surcharge and Judgment" against respondent in Douglas County Court on January 31, 2013. Hurst retained an attorney to represent him, and the attorney performed an accounting that showed an apparent shortfall of $13,893.54. It was not until the hearing on February 27, 2014, that respondent was finally able to account for nearly all the cash expenditures he made as Hurst's attorney.

Relator filed formal charges against respondent on November 1, 2013. A hearing before the referee was held on February 27 and March 12, 2014.

### 3. Referee's Findings

On count I, the thrust of which was a lack of competence and diligence while serving as Dell's guardian and conservator, the referee found that respondent's conduct violated his oath of office. The referee found by clear and convincing evidence that respondent failed to timely file the initial inventory, as well as annual accountings and reports, causing the court to repeatedly issue orders to show cause. He also failed to file his final accounting and to terminate the guardianship and conservatorship until 3 years after Dell's death. The referee found

those actions to be a failure to provide competent representation and reasonable diligence and promptness.

The referee rejected relator's claims that respondent's actions in failing to sell Dell's home amounted to incompetence, because many of the delays were outside respondent's control or were a simple matter of judgment. He rejected the allegation that respondent misled the court in requesting continuances, noting that "[t]here is not clear and convincing evidence that respondent gave false reasons in support of his requests for continuance or that he misled the Court in any way." The referee found that there was no evidence of dishonesty, but that the length of time to close the estate exhibited a lack of competence, diligence, and promptness.

On count II, regarding respondent's handling of Dell's estate, the referee also determined that respondent's actions violated his oath of office. The referee found that some of the initial delays resulted from Fogerty's reclusiveness and inaccessibility during her time as personal representative, compounded by her subsequent death, as well as the successor personal representative's refusal to serve and, finally, Hurst's grudging acceptance of the responsibility. Moreover, the contractor's slow progress in making renovations and the slow housing market during the winter of 2010-11 caused further delay. Ultimately, the referee determined that respondent's "inability to account for all of the cash expenditures prevented him from completing the accounting and closing the estate" and that clear and convincing evidence showed that "respondent was, in large part, responsible for the fact that the estate of Geraldine Dell was not closed for more than seven years from the day she died."

The referee determined that respondent lacked competence and diligence in not attempting to sell or otherwise dispose of the estate's personal property. The personal property that respondent caused to be stored was of little or no value and was eventually abandoned by Hurst after storage fees in the amount of $2,825 had been incurred.

Regarding allegations relating to the safekeeping of estate funds, the parties did not dispute that respondent had Hurst sign numerous blank checks in advance to avoid trips to

Gretna, Nebraska, where Hurst resided. Moreover, the contractor performing the renovations insisted on being paid in cash. Although respondent initially inspected the invoices and receipts from the contractor, he gradually began to simply place the receipts in a folder at his office without inspecting them. Many of the receipts and invoices were merely informal, handwritten notes from the contractor rather than official receipts.

Respondent withdrew large amounts of cash from the estate's bank account instead of writing separate checks to the contractor. He kept the cash in an envelope at his office and used it to pay the contractor's invoices. The referee found that respondent "grossly mishandled" the funds from Dell's estate. Although not "client funds, they were funds for which respondent's client . . . was responsible and accountable."

We find that the evidence is clear and convincing that respondent failed to maintain complete and accurate records of such account funds in violation of § 3-501.15(a). However, we also note that respondent never comingled the estate cash with other cash, and eventually, respondent was able to account for the discrepancies and apparent shortcomings in the estate's funds.

## 4. Sanctions

The referee did not find any aggravating circumstances in respondent's actions. The referee recommended a 90-day suspension of the respondent's license to practice law, due in large part to the various mitigating factors that existed in the case. The referee noted that "the evidence is persuasive that [respondent's] intentions were honest and that he was motivated by a strong feeling of obligation to a family member."

The referee succinctly summarized the additional mitigating factors as follows: (1) Respondent did not misappropriate estate funds; (2) the violations represented an isolated incident rather than a pattern of misconduct; (3) respondent had an unblemished disciplinary record over the entire length of his legal career, which spanned 35 years; (4) respondent was fully cooperative with the referee's office during his investigation of the grievance; (5) the record contained numerous

letters from active and retired judges and lawyers attesting to respondent's honesty, integrity, professionalism, and compassion for his clients, his pro bono work, and his overall competence as an attorney; (6) the letters also attested to the fact that respondent is a valued member of the bar, particularly with respect to his work with the Nebraska Lawyers Assistance Program.

Respondent is a Vietnam War veteran who was wounded during his service, but the referee rejected respondent's contention that PTSD contributed to his conduct in the case. The referee noted a letter from respondent's psychiatrist that stated: "[I]t is possible that the type of stress from this probate could have impacted [respondent's] dealing with his responsibility. But I am not aware of any major PTSD symptoms occurring during this time, and he took no medicine to deal with PTSD." There was no additional evidence that PTSD caused or was connected with respondent's failure to provide diligent and competent representation in this case.

## III. ASSIGNMENTS OF ERROR

Respondent takes two exceptions to the report of the referee filed on April 28, 2014. Respondent takes exception to the report's finding that PTSD was not a mitigating factor. Respondent also takes exception to the report's recommendation of a 90-day suspension of his license.

In all other respects, respondent does not challenge or contest the truth of the findings of fact by the referee.

## IV. STANDARD OF REVIEW

[1] In attorney discipline and admission cases, we review recommendations de novo on the record, reaching a conclusion independent of the referee's findings.[1]

## V. ANALYSIS

Under Neb. Ct. R. § 3-304, we may impose one or more of the following disciplinary sanctions: "(1) Disbarment by the Court; or (2) Suspension by the Court; or (3) Probation by the

---

[1] *State ex rel. Counsel for Dis. v. Smith*, 287 Neb. 755, 844 N.W.2d 318 (2014).

Court in lieu of or subsequent to suspension, on such terms as the Court may designate; or (4) Censure and reprimand by the Court; or (5) Temporary suspension by the Court."

[2] To determine whether and to what extent discipline should be imposed in a lawyer discipline proceeding, we consider the following factors: (1) the nature of the offense, (2) the need for deterring others, (3) the maintenance of the reputation of the bar as a whole, (4) the protection of the public, (5) the attitude of the respondent generally, and (6) the respondent's present or future fitness to continue in the practice of law.[2]

[3] Each attorney discipline case must be evaluated individually in light of its particular facts and circumstances.[3] In addition, the propriety of a sanction must be considered with reference to the sanctions imposed in prior similar cases.[4]

## 1. Posttraumatic Stress Disorder

We first address respondent's exception regarding the referee's refusal to consider PTSD as a mitigating factor. We see no indication in the record that PTSD played a role in the admitted violations. On the contrary, the referee considered a letter from respondent's psychiatrist that indicated PTSD in no way affected respondent's actions or ability to represent the interests of his clients or otherwise perform his duties. Accordingly, we also decline to consider PTSD as a mitigating factor.

## 2. Conclusion as to Discipline

### (a) Count I: Diligence and Competence

With regard to respondent's misconduct involving the lack of diligence and competence, which was due in large part

---

[2] *State ex rel. Counsel for Dis. v. Barnes*, 275 Neb. 914, 750 N.W.2d 668 (2008).

[3] *State ex rel. Counsel for Dis. v. Pivovar*, 288 Neb. 186, 846 N.W.2d 655 (2014).

[4] *State ex rel. Counsel for Dis. v. Beltzer*, 284 Neb. 28, 815 N.W.2d 862 (2012).

to his inexperience with probate cases, we find our decision in *State ex rel. Counsel for Dis. v. Seyler*[5] to be relevant. In *Seyler*, we determined that a 30-day suspension was appropriate where an attorney who normally worked in the area of estate planning accepted representation of a plaintiff in a personal injury case despite having very little litigation experience. The attorney in *Seyler* failed to respond to discovery requests and court orders, failed to attend hearings, and failed to keep his clients reasonably informed about developments in the case. All the mitigating factors present in *Seyler* are present in this case to a greater extent, and none of the aggravating factors were present.

In *State ex rel. Counsel for Dis. v. Barnes*,[6] we found a 30-day suspension appropriate for an attorney who was retained to help an organization obtain nonprofit corporation status, even though he primarily practiced in the areas of domestic relations and criminal law. The attorney's inexperience in *Barnes* led to various mistakes in the nonprofit's application for tax-exempt status. In *Barnes*, the attorney contended with personal and family health issues during the representation that caused him mental and financial stress. Additionally, like respondent, the attorney in *Barnes* cooperated with the Counsel for Discipline, admitted most of the allegations in the formal charges, and acknowledged responsibility for his actions, and there was no record of other complaints against the attorney. We find the scope of aggravating and mitigating circumstances in *Barnes* to be analogous to the present case.

Both relator and respondent cite to our decision in *State ex rel. Counsel for Dis. v. Holthaus*[7] because of its factual similarity to these proceedings. Similar to respondent, the attorney in *Holthaus* did not challenge the truth of the allegations of his violations in the underlying probate case that led to sanctions. He took upon himself all the duties and responsibilities

---

[5] *State ex rel. Counsel for Dis. v. Seyler*, 283 Neb. 401, 809 N.W.2d 766 (2012).

[6] *Barnes, supra* note 2.

[7] *State ex rel. Counsel for Dis. v. Holthaus*, 268 Neb. 313, 686 N.W.2d 570 (2004).

of personal representative while serving as an attorney for the personal representative. Thereafter, he failed to timely file pleadings and tax returns, did not communicate with the residual beneficiary of the estate, and improperly handled estate assets. We determined that the violations warranted a 6-month suspension of his license to practice law.

We distinguish this case from *Holthaus* insofar as the various mitigating factors that exist in the present case did not exist in *Holthaus*. For example, in the present case, respondent's violations were isolated incidents rather than a pattern of misconduct. Respondent was candid in his admissions and expressions of remorse. Respondent had a 35-year legal career without prior misconduct. Numerous retired and active judges and lawyers wrote letters on respondent's behalf attesting to respondent's good reputation and his work with the Nebraska Lawyers Assistance Program. No such mitigating factors were present in *Holthaus*.

The referee found that respondent's intentions were honest and that he was motivated by a feeling of obligation to help a family member whom he believed had no one else to assist her in these matters. Respondent has stated numerous times that this was the only probate case he had ever taken, and he intends to decline to accept representation on any probate or estate cases in the future.

### (b) Count II: Safekeeping Client Funds

Respondent cites to our decision in *State of Nebraska ex rel. NSBA v. Abrahamson*[8] to support his exception to a 90-day suspension. Indeed, we find our decision in that case to be helpful in considering respondent's violations. In *Abrahamson*, we concluded that a 90-day suspension was appropriate for an attorney who failed to maintain complete and accurate records of client funds coming into his possession and failed to render appropriate accounts of client funds. During the hearing in that case, the attorney's own accountant

---

[8] *State ex rel. NSBA v. Abrahamson*, 262 Neb. 632, 634 N.W.2d 462 (2001).

testified that "on a scale of 1 to 10, with 10 being good book-keeping practices, [the attorney's] accounting practices merited a grade of 1."[9]

As in *Abrahamson*, respondent's actions in handling the estate funds were neither intentionally deceptive nor were they deliberate attempts to misappropriate client funds. Instead, we find that his actions are more adequately characterized as gross mishandling or "negligent ineptitude."

In *Abrahamson*, we also considered various mitigating factors, including the attorney's cooperation during the disciplinary proceedings, the correction of his flawed accounting practices, and his continuing commitment to the legal profession and the community. Those mitigating factors are present in this case to an even greater extent, as noted above.

### (c) Discipline

The diligent and observant handling of client funds is among the most important safeguards against the appearance of misconduct and is fundamental to maintaining the client's confidence in the legal representation and the public's perception of the legal profession. Although respondent's actions in handling the estate funds were inadvertent, our decision here is instructive in preventing similar scenarios by other members of the bar in the future.

Based on a review of prior cases involving similar violations, and upon due consideration of the record, we find that a 30-day suspension with a 1-year period of probation is appropriate. After said suspension is served, respondent shall automatically be reinstated to practice law provided that relator has not notified this court of further violations during that time period.

Upon reinstatement, respondent shall complete 1 year of monitored probation, which shall include but not be limited to the following:

(1) On a monthly basis, respondent shall provide the monitoring attorney that has been approved by relator with a list of all cases for which respondent is then currently responsible,

---

[9] *Id.* at 636, 634 N.W.2d at 465.

said list to include the following information for each case: (a) the date the attorney-client relationship began, (b) the type of case (i.e., criminal, dissolution, probate, contract, et cetera), (c) the date of the last contact with the client, (d) the last date and type of work completed on the case, (e) the next type of work and date to be completed on the case, and (f) any applicable statute of limitations and its date.

(2) Respondent shall work with the monitoring attorney to develop and implement appropriate office procedures to ensure that client matters are handled in a timely manner.

(3) If at any time the monitoring attorney believes respondent has violated a disciplinary rule or has failed to comply with the terms of probation, the monitoring attorney shall report the same to relator.

## VI. CONCLUSION

This court finds by clear and convincing evidence that respondent has violated his oath of office and §§ 3-501.1, 3-501.3, and 3-501.15 of the Nebraska Rules of Professional Conduct. Respondent is suspended from the practice of law for 30 days, effective immediately, and is subject to probation with monitoring for 1 year immediately following the 30-day suspension. At the end of the 30-day suspension, respondent shall automatically be reinstated to the practice of law, provided that relator has not notified this court that respondent has violated a disciplinary rule during his suspension.

Respondent is ordered to obtain an attorney approved by relator who shall monitor respondent's cases and legal activity in accordance with the requirements set forth in this opinion. Respondent is directed to pay the costs and expenses in accordance with Neb. Rev. Stat. §§ 7-114 and 7-115 (Reissue 2012) and Neb. Ct. R. §§ 3-310(P) (rev. 2014) and 3-323(B) within 60 days after an order imposing costs and expenses, if any, is entered by this court.

JUDGMENT OF SUSPENSION.