Workman, Justice, concurring:
After struggling a great deal with the decision in this case, I concur with the Hearing Panel Subcommittee's recommended sanctions. Yet, I am compelled to write separately to express the competing strong views this case elicits, and how troubling certain aspects of it are.
On one hand, Mr. Sidiropolis has done an outstanding job of pulling himself out of the throes of active addiction and rebuilding his life. Such a sustained recovery is not easy. I respect what he has accomplished and how he is helping others with the same disease. But the circumstances of what led to this disciplinary proceeding are disturbing.
Mr. Sidiropolis was apprehended by law enforcement while in the process of transporting ten bricks of heroin from Pennsylvania to a heroin dealer in West Virginia in 2015. His evidence suggested that he did not plan to engage in interstate transportation of this immense volume[1] of heroin, but had done so in order to acquire his own supply. Had he not been arrested by federal authorities in the process of this delivery, the danger of death to other human beings from his conduct is patently obvious.
As a result of his arrest, Mr. Sidiropolis pled guilty to one count of conspiracy to *855 distribute heroin[2] and was accepted into the federal drug court program. As part of the federal drug court program, Mr. Sidiropolis was monitored and supervised over the course of two years during which he attended daily group therapy, cognitive therapy, and individual therapy. He also performed 500 hours of community service for Ohio Valley Recovery, Inc., a nonprofit organization, as well as underwent more than 150 urine screens, the results of which were negative. Mr. Sidiropolis also sought assistance from and self-reported to the Office of Disciplinary Counsel. Further, he sought help from the Judges and Lawyers Assistance Program, which resulted in his participation in a twelve-step addiction recovery program. Finally, Mr. Sidiropolis has been very active in assisting others with their recovery from addiction through a self-help program that focuses on helping others. He has even started a twelve-step meeting in Marshall County and brought recovery meetings inside both the Belmont County, Ohio Correctional Facility and the Miracles Happen, a drug rehabilitation facility located in Wheeling, West Virginia.
The Lawyer Disciplinary Board asserts that no harm came to any of Mr. Sidiropolis's clients in that, upon recognizing he was addicted in 2015, he engaged co-counsel in all of his cases. However, the record is silent on whether any harm came to any client in the several years that Mr. Sidiropolis practiced law while in active addiction prior to this realization. The fact that no ethics complaints were filed during this period of active addiction is encouraging, but certainly not dispositive on this finding of fact.
As the Lawyer Disciplinary Board points out, serious disciplinary sanctions have been imposed in our state's lawyer disciplinary system involving the use of illegal drugs. See Office of Disciplinary Counsel v. Alderman , 229 W. Va. 656, 734 S.E.2d 737 (2012) (imposing sanction of two-year suspension, with one year served retroactively, after attorney convicted of two misdemeanor drug offenses involving possession of cocaine); Comm. on Legal Ethics of the W. Va. State Bar v. McCorkle , 192 W. Va. 286, 452 S.E.2d 377 (1994) (imposing sanction of two-year suspension after attorney found to have used cocaine and crack cocaine, improperly solicited clients and gave false testimony before the hearing panel subcommittee); Comm. on Legal Ethics of the W. Va. State Bar v. White , 189 W. Va. 135, 428 S.E.2d 556 (1993) (imposing sanction of two-year suspension after attorney convicted for possession of cocaine, marijuana, and Percocet ); and Comm. on Legal Ethics of the W. Va. State Bar v. Roark , 181 W. Va. 260, 382 S.E.2d 313 (1989) (imposing sanction of three-year suspension after attorney pleaded guilty to several counts of possession of cocaine while a public official); Comm. on Legal Ethics v. Harman , 179 W. Va. 298, 367 S.E.2d 767 (1988) (imposing sanction of public reprimand and costs for delivery of marijuana to a client).[3]
*856 As addiction has come to be recognized as a disease rather than a character flaw, however, much more emphasis in every arena has been placed on facilitating recovery rather than strictly punishing addicts. Nonetheless, a license to practice law is a privilege, not a right. It is actually much more than a privilege; it is a trust imbued with substantial ethical obligations that must be zealously respected and observed. It reposes in a person the ability to advocate for the interests of others in their freedom and their property.
The majority cites my concurring in In re Reinstatement of diTrapano , 240 W. Va. 612, 814 S.E.2d 275 (2018) (Workman, J., concurring), in which I recognized that "there is hope in the battle against the disease of addiction that so many families are facing: and ... West Virginia's legal profession, including our disciplinary system, supports the recovery and rehabilitation of impaired lawyers." Id . at 620, 814 S.E.2d at 283. However, it should be noted that Mr. diTrapano was denied his first petition for reinstatement and, in fact, before he was reinstated, compiled a record of eleven years of sustained sobriety and active involvement in the recovery community, not only in furtherance of his own health but to help many others as well. Thankfully, those who have the means[4] and the will to enter into the process of sustained recovery are no longer cast out by society as bad people, but instead as people of courage and strength.
Perhaps what has been even more troubling than this case, however, is the fact that the majority of this Court just last week issued an opinion sentencing a man to the rest of his natural life[5] in the penitentiary for selling a small amount of heroin, having "poured some heroin into a folded piece of paper - i.e., a receipt from the Pizza Hut," according to the State's brief in that case.[6] Over a month before that, in a remarkably similar case also involving the imposition of a recidivist life sentence in which the delivery of a controlled substance, Oxycodone, was the triggering offense, the Court held that the imposition of a recidivist life sentence violated the proportionality clause of our state constitution.[7]
Also just this week, this Court suspended a magistrate without pay pending a full hearing based on her alleged inability to perform her judicial duties properly as a result of addiction.[8] The difference in her case and Mr. Sidiropolis's is that he sought immediate help for his disease, at least when he was facing federal criminal charges.
*857 Although these three cases arise in vastly different contexts, they still beg the question, where is the equal justice ? While truly equal justice is a rarely obtainable concept, because factual scenarios differ so much and judicial decision-making can vary greatly, at least in the context of professional ethics, a degree of consistency should be sought. Sadly, not everyone has the means to access addiction treatment, which furthers the inequality of opportunity of individuals to address addiction.
For those reasons, I have decided after much deliberation to concur in the recommended sanction, but to urge the Lawyer Disciplinary Board to maintain a tight rein on the conditions of Mr. Sidiropolis's continued status as a practicing attorney.
I wish Mr. Sidiropolis the best and hope he realizes what an incredible trust is being placed in him as a lawyer not only to serve his clients professionally but going forward to also bring respect and trust of people to the legal profession. As I recognized of Mr. diTrapano in his journey when his license was reinstated:
In oral argument in support of his petition for reinstatement before this Court, Mr. diTrapano said that if his license to practice law is restored, he will treasure it. I sincerely believe that he will. And I hope and believe that he will also treasure, preserve, and continue his remarkable lifelong journey of recovery. He has the potential to make major contributions not only to our legal system, but also to the recovery community by continuing to share his time, his energy, and his life experience to help others on the difficult road to recovery.
In re Reinstatement of diTrapano, 240 W. Va. at 620, 814 S.E.2d at 283 (Workman, J., concurring). Similarly, I find that Mr. Sidiropolis has the opportunity and potential to make great contributions to our legal community and the recovery community and it is my sincerest hope that he does so.
For the foregoing reasons, I respectfully concur.

Each "brick" is one kilogram or 2.20 pounds. See DEA Intelligence Report, Slang Terms and Code Words: A Reference for Law Enforcement Personnel (Unclassified) (July 2018), https://www.dea.gov/sites/default/files/2018-07/DIR-022-18.pdf.

At the conclusion of Mr. Sidiropolis's successful completion of eighteen months in the federal drug court program, as well as successfully completing six months of an after-care program, he filed a motion seeking dismissal, with prejudice, of the federal information charging him with one count of conspiracy to distribute heroin. His motion was granted in an order entered on May 15, 2017.

Cases from around the country have also supported severe sanctions of lawyers under such situations. See, e.g., People v. Holt , 832 P.2d 948 (Colo. 1992) (imposing suspension from practice of law for one year and one day where attorney used illegal drugs that included marijuana and cocaine, as well as failed to file personal state and federal income tax returns and failed to pay federal withholding taxes for professional corporation); In re Howard , 765 A.2d 39 (Del. 2000) (imposing three-year suspension after attorney pleaded guilty to two drug-related misdemeanors, including possession of cocaine); In re Clegg , 41 So.3d 1141 (La. 2010) (imposing one-year and one-day suspension, with all but six months deferred, followed by two-year period of probation for using and possessing cocaine, which was reported by attorney's partners in law firm); State ex rel. Counsel for Discipline of Neb. Sup. Ct. v. Hubbard , 276 Neb. 741, 757 N.W.2d 375 (2008) (imposing nine-month suspension, with five-year probationary period and continued participation in a lawyer's assistance program after attorney pleaded guilty to attempted possession of the controlled substance, cocaine); Disciplinary Counsel v. Jarabek , 121 Ohio St.3d 257, 903 N.E.2d 624 (2009) (imposing two-year suspension, with no credit for time served on interim suspension, and with second year stayed on conditions where attorney was convicted of fifth-degree drug possession, as well as failed to appear at a client's court appearance and engaged in the practice of law in violation of an interim suspension); In re Berk , 157 Vt. 524, 602 A.2d 946 (1991) (imposing six-month suspension after attorney charged with attempted possession of cocaine, but charge dismissed after he successfully completed a pretrial diversion program).

Sadly, not every person has the means or access to addiction treatment.

The petitioner will be eligible for parole in accordance with the provisions of West Virginia Code § 62-12-13(c) (2015), after having served fifteen years imprisonment.

In State v. Norwood , No. 17-0978, --- W.Va. ----, --- S.E.2d ----, 2019 WL 2332195 (W. Va. May 30, 2019) (Workman, concurring, in part, dissent, in part), the majority was presented with a case involving the imposition of a recidivist life sentence. An issue before the Court was whether the recidivist life sentence violated the proportionality clause of article III, section 5 of the West Virginia Constitution. The majority found that it did not. Id . at ----, --- S.E.2d at ----, 2019 WL 2332195 at *12. I dissented from this determination, because in addition to the triggering felony of delivery of the controlled substance, heroin, the petitioner's two prior felonies included: (1) a 2016 conviction in Virginia for distribution or possession with intent to distribute marijuana for which he was sentenced to a two-year term of incarceration with all but sixty days suspended with a probationary release; and (2) a 2008 conviction, also in Virginia, for eluding the police in a vehicle for which he was sentenced to a four-year term of incarceration that was suspended after the petitioner was incarcerated for just four months and he was placed on indefinite probation. Id . at ----, --- S.E.2d at ----, 2019 WL 2332195 at *13. Under our law, the imposition of a recidivist life sentence was not proportional to the offense for which the petitioner stood convicted and conflicted with our prior case law.

In State v. Lane , 241 W. Va. 532, 826 S.E.2d 657 (2019), the Court reversed a recidivist life sentence where the petitioner's triggering felony was delivery of the controlled substance Oxycodone. The petitioner's two prior felonies were an unlawful wounding conviction in 1997 and conspiracy to commit a felony of transferring stolen property in 2009. Id . at ----, 826 S.E.2d at 659.

See In re Carrie Wilfong , No. 19-0170, 2019 WL 2337520 (W. Va. filed June 3, 2019) (memorandum decision).